# OCTOBER, 1903.

## J. M. Anderson v. J. J. Terrell, Commissioner General Land Office, et al.

No. 1238. Decided October 29, 1903.

**1.—Lease of School Land—Forfeiture.**

Section 21 of the Act of April 4, 1895, providing for the sale and lease of the free school and asylum lands, in requiring the lessee to pay the annual rents directly to the Treasurer of the State, does not require that said lessee, with the rent money, shall furnish a description of the land. Tender of the lease money is sufficient. (P. 77.)

**2.—Same—Default and Cancellation.**

Failure of lessee to pay rental within sixty days after it falls due, will not ipso facto work a forfeiture of the lease. The lessee, on the contrary, has the right to make payment at any time before the formal cancellation of the lease by the Commissioner of the Land Office in the manner prescribed by law. (P. 77.)

Original application for writ of mandamus against the Commissioner of the General Land Office.

*James & Yeiser,* for the relator.—The facts of record and alleged in this petition show conclusively that the lease in question was lawfully

canceled by the Commissioner of the General Land Office when relator's application was filed, and that a lease account of cancellation existed at the date of such application. This being true, there was no power vested in the Commissioner of the General Land Office to revoke this cancellation and accept a payment of the lease money and reinstate this lease.

The certificate of the State Treasurer, which is here attached as an exhibit and is marked exhibit F, shows that a partial payment was attempted to be made on the lease in controversy of $28.80 on October 31, 1901, which amount was insufficient to cover the lease money due on said entire lease, and was therefore not a sufficient payment to keep said lease in legal standing, and this money was returned on January 3, 1902, before the filing of relator's application to purchase. This certificate further shows that after more than sixty days had elapsed from the time that the payment had became due on said lease, one William Mendell, on November 14, 1901, sent to the Land Office the sum of $48 to be applied on his account on a portion of certain lands included in said lease and this money was also returned by the State Treasurer. When default occurred at the expiration of sixty days in the payment of the lease money due on said lease, it became the duty of the Commissioner of the General Land Office to immediately cancel said lease, and this he did thereafter, and thereupon relator filed his application to purchase the land in controversy. It was not until the 29th day of January, 1902, some time after the award to relator, that the lease money was paid in full on the aforesaid lease, which fact appears from the first part of the certificate of the State Treasurer, marked exhibit F. Certainly these facts did not entitle the Commissioner of the General Land Office to cancel the sale which he had already made and to reinstate a lease upon which a default had been made and which it was the duty of the Commissioner of the General Land Office to immediately cancel.

*C. K. Bell,* Attorney-General, and *T. S. Reese,* Assistant, for respondent.—The claim of relator seems to rest almost entirely upon the proposition that if a lessee fails to pay the rent within sixty days after it is due, this failure operates ipso facto a cancellation of the lease. The contention of respondent, the Land Commissioner, is, that if the rent is paid after the expiration of the sixty days, but before any action is taken by the Land Commissioner to cancel the lease, the same should not be canceled, and, as appears from respondents' answer, this has always been the practice of the land department.

This we believe to be in accordance with well settled principles where a forfeiture is provided for noncompliance with a condition subsequent. Schulenberg v. Harriman, 21 Wall., 44; Van Wyck v. Knevals, 106 U. S., 361; United States v. Willamette, etc., Co., 55 Fed. Rep., 711; Minneapolis, etc., Ry. Co. v. Duluth, etc., Ry. Co., 45 Minn., 104.

We do not mean by this that an actual formal cancellation by the

Land Commissioner in the form and manner prescribed by the statute would be necessary, to shut out the lessee, but that some affirmative action by the Land Commissioner showing that such lease is treated as canceled, as in the case of West v. Commissioner, 96 Texas, 548, would be necessary.

In this case, as shown by both petition and answer, actual affirmative action was taken, by cancellation of the lease, but before this was done, but after the expiration of the sixty days, as shown by the answer, enough money had been actually paid to the Treasurer to keep the lease in good standing. Upon being advised of these facts, the Commissioner set aside such cancellation and reinstated the lease.

GAINES, Chief Justice.—This is an original suit to compel the Commissioner of the General Land Office to rescind his action in canceling certain applications made by the relator for the purchase of two sections of school lands, and in reinstating a certain lease in favor of defendants Ratliff and Whitewood, and also to compel him to cancel that lease and to award the lands to the relator as a purchaser. The Commissioner has answered specially under oath, averring the facts upon which he relies to justify his action, and the relator has not denied the facts so averred.

From the facts pleaded by the parties we make the following statement of the case: The lands in controversy are situate in the absolute lease district; and, in connection with other school lands amounting in the aggregate as shown by the lease to 2640 acres, were, on the 23d day of September, 1897, leased to defendants Ratliff and Whitewood for the term of ten years, beginning on the 4th day of that month. The rent was under the statute payable in advance within sixty days from the 4th day of September of each year, and amounted in the aggregate to the sum of $79.20. It was regularly paid up to the 4th day of September, 1901. On the 31st day of October of that year the lessees paid to the State Treasurer $28.80 on the lease, and on the first day of November next thereafter they tendered to that officer the sum of $48, which was refused, because not accompanied with a description of the land. On the 14th day of the last named month the lessees again tendered the sum of $48, and it was accepted and paid into the treasury. Some time previous to the 4th of September, 1901, eighty acres of the land had been sold by the State, which reduced the amount of the annual rent to $76.80. On the 6th day of January, 1902, the Commissioner, not having been advised that the money had been paid into the treasury, canceled the lease; and on the 9th day of the same month, the relator made application to purchase the two sections in controversy as an actual settler. The two sections were awarded to him; but subsequently, upon being advised by the State Treasurer that at the time he canceled the lease of Ratliff and Whitewood the rent money due September 4, 1901, was in the treasury, he reinstated the lease and canceled the sale to the relator. It is also averred in the answer that

upon an official resurvey of one of the leased sections it was found to contain only 555 7-10 acres. But since the amount paid, together with that tendered on November 1st, was sufficient to pay the lease money after the eighty acres were sold, we deem this unimportant. The lease is of the sections by name and for a sum in gross, and it may be doubted whether a small deficiency of acreage in one of the sections would entitle the lessee to any abatement of the rent.

We are of the opinion that the previous payment of $28.80, and the tender of $48 on November 1st, saved the lease from forfeiture. Section 21 of the Act of April 4, 1895, which provides for the sale and lease of the free school and asylum lands, merely requires the lessees of the leased lands to pay the annual rents "directly to the Treasurer of the State," and makes it the duty of the Treasurer to keep an account with each lessee. It does not require the lessee to furnish with the money a description of the leased land. Such a regulation may be useful in many cases, but we think a tender of the money sufficient without such description. Therefore we conclude that there was no ground for forfeiting the lease.

For another reason we think the lease should not have been canceled. Neither the Act of 1895 nor that of 1901, anywhere declares that the failure to pay the rental within sixty days after it falls due shall ipso facto work a forfeiture of the lease. The former provides that the Commissioner for such failure "may declare such lease canceled by a writing under his hand and seal of office." The latter act prescribes that in case of a failure to pay the rent for sixty days the Commissioner "shall cancel the lease," etc. We think, therefore, that the lessee has the right to make payment at any time before the formal cancellation was actually made, and that therefore the Commissioner made a mistake in attempting to cancel the lease in this case; and that it was proper for him to reinstate it and to cancel the award made to the relator. See Bank v. Dowlearn, 94 Texas, 383.

It follows that the writ of mandamus should be refused, and it is accordingly so ordered.

*Refused.*