ST. LOUIS SOUTHWESTERN RY. CO. OF TEXAS v. WOLDERT GROCERY CO. et al.

(Court of Civil Appeals of Texas. Texarkana. Jan. 2, 1914. Rehearing Denied Jan. 22, 1914.)

1. INJUNCTION (§ 26*) — MULTIPLICITY OF SUITS.

Whether a court of equity will enjoin actions at law to prevent multiplicity of suits is controlled by no fixed rule, but each case depends upon its own particular facts.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 24–49, 54–61; Dec. Dig. § 26.*]

2. INJUNCTION (§ 26*) — GROUNDS — MULTIPLICITY OF SUITS.

Before several actions at law will be enjoined in order that the controversies may be determined in a single suit, it must appear that the different suits may be determined by the settlement of one or more issues of law or of fact common to them all.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 24–49, 54–61; Dec. Dig. § 26.*]

3. INJUNCTION (§ 26*) — GROUNDS — MULTIPLICITY OF SUITS.

Where a shipper instituted in a justice court 17 different suits against the initial carrier for injuries to 17 different shipments of fruit shipped from different points to different consignees on different dates to different destinations, and passing over the lines of several different carriers, such carrier could not, to prevent multiplicity of suits, enjoin the prosecution of such suits, though the consolidation of the suits would spare it great inconvenience and expense.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 24–49, 54–61; Dec. Dig. § 26.*]

4. INJUNCTION (§ 118*) — PETITION — SUFFICIENCY—MULTIPLICITY OF SUITS.

Where the petition in a suit to enjoin the maintenance of several actions against the initial carrier for damage to several interstate shipments, though stating that it performed its legal duty in connection with the transportation, failed to negative the negligence of connecting carriers for whose dereliction the federal

statute made plaintiff liable, it was fatally defective.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 223–242; Dec. Dig. § 118.*]

Appeal from District Court, Smith County; R. W. Simpson, Judge.

Application for injunction by the St. Louis Southwestern Railway Company of Texas against the Woldert Grocery Company and another. From judgment for defendants, plaintiff appeals. Affirmed.

Marsh & McIlwaine, of Tyler, for appellant. Price & Beaird, of Tyler, for appellees.

HODGES, J. This is an application for an injunction filed by the appellant in the district court of Smith county, seeking to restrain the Woldert Grocery Company and S. C. Halverson, a justice of the peace, from the further prosecution of 17 different suits theretofore filed by the Woldert Grocery Company in the justice court of Smith county. The petition alleges, in substance, that the appellant is a railway corporation, with its principal office in Tyler, Smith county, Tex.; that the Woldert Grocery Company is a private corporation, with its place of business in the same city; that S. C. Halverson is a justice of the peace in and for precinct No. 1 of Smith county, Tex., and resides in the city of Tyler. It is further alleged that on the 23d day of September, 1913, the Woldert Grocery Company instituted in the justice court before Halverson 17 separate and distinct suits against the appellant, numbered consecutively from 533 to 549, and that in each of those suits citation had been issued and served upon the appellant. The cause of action, as set out in the citation in suit No. 533, is as follows: "For loss and damage sustained by plaintiff to Elberta peaches shipped by plaintiff from Gresham, Tex., to Iron City Produce Company, Pittsburg, Pa., July 23, 1912, in car Erie No. 61023 over defendant's road. Plaintiff asks judgment for said sum of $110.15 with 6 per cent. interest thereon from July 23, 1912, together with an attorney's fee of $10." The cause of action in each of the 16 cases following is stated in similar language, but showing different shipments on different dates to different points and, in most instances, to different consignees. The petition then proceeds as follows:

"(5) Plaintiff further shows to the court that the said defendant, Woldert Grocery Company, in each of said suits is seeking to hold this plaintiff liable for damages claimed by him in said respective suits under what is known as the 'Carmack Amendment,' this plaintiff being the initial carrier in each of said shipments; that said shipments were interstate shipments, and, in reaching their destination out of the state of Texas, moved over the lines of a number of railroad companies, connecting carriers with this plaintiff; that plaintiff handled each of said shipments with proper dispatch and care, and if said losses occurred, as alleged by defendant, Woldert Grocery Company, then plaintiff shows that the damage was not caused by it, but that such damage was caused by its connecting carriers over whose line of railway the respective shipments moved in reaching their destinations; that under the law, plaintiff has the right to recover over against its connecting carriers such damages, if any, as may be recovered against it in said respective suits by defendant Woldert Grocery Company, and to this end it has a right to make all of its connecting carriers, each being a railroad company with agents representing it in this state, parties defendant to said respective suits; that, in order to do this, it will be necessary for it to incur great expense, and that it will be put to much trouble and harassment in so doing.

"(6) That all of said railway companies are proper parties and can be made such in this one suit, and thereby the rights of all said connecting carriers be determined in one action; that each and all of defendant's said claims or demands, if any, against this plaintiff accrued prior to the filing of said respective suits; that all of said claims and demands can be settled by one suit; that said 17 suits were instituted against it by said Woldert Grocery Company for the purpose of vexing, harassing, and needlessly embarrassing plaintiff in the preparation of its defense to said respective suits.

"(7) That said Woldert Grocery Company, defendant, is seeking to recover an attorney's fee of $10 in each of said suits, except the last two numbered ones, when, in truth and in fact, as before alleged, all of its claims accrued prior to the institution of said suits on said 23d day of September, 1912, and therefore it is only entitled to recover one attorney's fee, if any, against this plaintiff, in that each and all of its claims have accrued prior to the institution of said suits.

"(8) That each and all of said 17 shipments were interstate shipments, and in reaching their destination were transported over the lines of a number of railroad companies; that, in order for plaintiff to make its proper defense and show that it is not liable for the damage, if any, suffered by the property so transported, it will be necessary that it take the depositions of a large number of resident and nonresident witnesses, by whom it will prove that the respective shipments were properly cared for in transit; that they moved with proper dispatch, and that, if damaged in transit, the damage was not occasioned by any fault of plaintiff or its connecting carriers; that, in order for it to do this, it will be necessary for it to trace the respective shipments from the time it moved them until their arrival at point of destination; that a large number of the ship-

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

ments were handled in whole or in part by the same people; that in one suit it will only be necessary to take the depositions of these respective witnesses one time to establish its defense, while in the separate suits it will be necessary to take their depositions a large number of times. As an example of the worry, harassment, and expense to which plaintiff will be put if defendant Woldert Grocery Company should be permitted to prosecute its said separate suits, plaintiff shows that, of the 17 shipments, 14 of them were by plaintiff, in keeping with the said defendant's instructions, delivered to its connecting carrier, St Louis, Iron Mountain & Southern Railway Company at Texarkana; that, in order for it to show when said respective shipments reached said point, the time it delivered said shipments, the time of delivery to its connecting line, the disposition of the car while in the Texarkana yards and as to the condition of the contents of the car, it will be necessary that it take the depositions of its agent and other employés by whom the cars were handled at that point 14 times, while, if defendant should be required to set up his different causes of action in this proceeding, it will be only necessary to take the depositions of said witnesses the one time; that a like condition will prevail if defendant be permitted to prosecute its 17 separate suits in respect to the taking of the depositions of the agent and other employés of its said connecting carrier at Texarkana, by whom said several shipments were handled, and so on throughout the whole transportation or transit of the respective cars.

"(9) Plaintiff further shows that the said 17 suits cannot be consolidated in the justice court, for the reason that, while the demands separately are within the jurisdiction of that court, the aggregate amount of the respective claims exceed the jurisdiction of that court.

"(10) That each and all of the claims and demands sued on by defendant Woldert Grocery Company in its said 17 suits in the justice court can be adjusted in this suit, and thereby a multiplicity of suits be avoided; that, unless the defendant, Woldert Grocery Company, be restrained, it will proceed to prosecute each of its said suits in the justice court, and that plaintiff will be forced to expend much money in the defense of said suits; that it will be compelled to have attorneys to represent it in each of said suits; that it will be forced to expend much money in the way of costs and otherwise in defending said suits; that the amount thus required to be expended by it will exceed in value the sum of five hundred ($500.00) dollars, as it is informed and believes, and on such information and belief it alleges that the amounts that it will be unnecessarily required to expend in the defense of said suits will be the sum of five hundred and fifty

($550.00) dollars; that, as before set out, plaintiff is the defendant in the said suits and the defendant, Woldert Grocery Company, is plaintiff in each of said suits; that the amount sought to be recovered by the said defendant, Woldert Grocery Company, against plaintiff in all of said suits aggregates the sum of two thousand one hundred forty-two and 17/100 ($2,142.17) dollars.

"(11) That to permit said defendant to prosecute said suits will cause plaintiff to incur unnecessary costs and expense; that it will put it to much unnecessary worry and harassment in the defense of said suits."

The petition was sworn to by one of the appellant's attorneys.

It does not appear from the record before us that any answer to this petition was filed by either the Woldert Grocery Company or Halverson, but we gather from the recitals in the judgment rendered that the district judge set the petition down for a hearing and upon that hearing refused to grant the writ. There is no statement of facts indicating that any testimony was heard at that time, and it will therefore be assumed that the court refused the application solely because of the insufficiency of the facts alleged.

[1] The extent to which courts of equity will go in enjoining actions at law for the purpose of preventing a multiplicity of suits can be determined by no fixed rule. Each case apparently is made to depend upon its own peculiar facts. As stated by the court in Hale v. Allison, 188 U. S. 56, 23 Sup. Ct. 244, 47 L. Ed. 380: "Cases in sufficient number have been cited to show how divergent are the decisions on the question of jurisdiction. It is easy to say it rests upon the prevention of a multiplicity of suits, but to say whether a particular case comes within the principle is sometimes a much more difficult task. Each case, if not brought directly within the principle of some preceding case, must, as we think, be decided upon its own merits and upon a survey of the real and substantial convenience of all parties, the adequacy of the legal remedy, the situations of the different parties, the points to be contested, and the result which would follow if jurisdiction should be assumed or denied; these various matters, being factors, to be taken into consideration upon the question of equitable jurisdiction on this ground, and whether within reasonable and fair grounds the suit is calculated to be in truth one which will practically prevent a multiplicity of litigation and will be an actual convenience to all parties, and will not unreasonably overlook or obstruct the material interests of any. The single fact that a multiplicity of suits may be prevented by this assumption of jurisdiction is not in all cases enough to sustain it. It might be that the exercise of equitable jurisdiction on this ground, while preventing a formal multiplicity of suits, would nevertheless be attended with more and deeper inconvenience to the defendants

than would be compensated for by the convenience of a single plaintiff; and, where the case is not covered by any controlling precedent, the inconvenience might constitute good grounds for denying jurisdiction."

Mr. Pomeroy in volume 1 (3d Ed.) § 245, undertakes to enumerate all the possible conditions under which a court of equity will interfere by injunction with actions at law or take cognizance of them in order to prevent a multiplicity of suits. He says: "(1) Where, from the nature of the wrong, and from the settled rules of the legal procedure, the same injured party, in order to obtain all the relief to which he is justly entitled, is obliged to bring a number of actions against the same wrongdoer, all growing out of the one wrongful act and involving similar questions of fact and of law. To this class would belong cases of nuisance, waste, continued trespass, and the like. (2) Where the dispute is between two individuals, A. and B., and B. institutes or is about to institute a number of actions either successively or simultaneously against A., all depending upon the same legal questions and similar issues of fact, and A. by a single equitable suit seeks to bring them all within the scope and effect of one judicial determination. A familiar example of one branch of this class is the case where B. has brought repeated actions of ejectment to recover the same tract of land in A.'s possession, and A. finally resorts to a suit in equity by which his own title is finally established and quieted, and all further actions of ejectment by B. are enjoined. (3) Where a number of persons have separate and individual claims and rights of action against the same party, A., but all arise from some common cause, are governed by the same legal rule, and involve similar facts, and the whole matter might be settled in a single suit brought by all these persons uniting as coplaintiffs, or one of the persons suing on behalf of the others, or even by one person suing for himself alone. The case of several owners of distinct parcels of land upon which the same illegal assessment or tax has been laid is an example of this class. (4) Where the same party, A., has or claims to have some common right against a number of persons, the establishment of which would regularly require a separate action brought by him against each of these persons, or brought by each of them against him, and instead thereof he might procure the whole to be determined in one suit brought by himself against all the adverse claimants as codefendants."

[2] The facts of this case more nearly approximate what the author in the above quotation styles the second class. In order for any given case to come within that class, it should appear that the different suits which are sought to be restrained may be determined by the settlement of one or more issues of law or of fact common to them all.

[3] It then becomes proper for us to analyze the case presented in this appeal and determine whether or not it falls within the definition of any of those cases of which equity will take cognizance. The facts embraced in the petition which are material to be considered in disposing of the appeal may be summarized as follows: The Woldert Grocery Company claimed damages against the appellant for injuries to 17 different shipments of fruit. To recover those damages 17 different suits were instituted. These cargoes of fruit were shipped from different points to different consignees on different dates and at different destinations, passing over the lines of several different carriers. It thus appears that the suits are each based upon separate and distinct transactions or contracts of carriage. So far as the pleadings of the Woldert Grocery Company show, the liability of the appellant may be based upon its own negligence or that of its connecting carriers. It is claimed by the appellant that it performed its duty in transporting the various shipments with proper care and dispatch, and that the injury, if any, occurred on the line of some one or more of the connecting carriers. As a ground for the interposition of a court of equity, it is alleged that all of the suits may be tried in one; that to permit them to be separately prosecuted in the justice court would require the appellant to incur considerable expense in taking the depositions of a number of witnesses to prove the facts necessary to exonerate it and its connecting lines from liability.

The question then is: Do these facts call for the interposition of a court of equity? It may be stated at the outset that such courts will not issue a writ of injunction to restrain numerous actions at law merely for the purpose of making it more convenient to the defendant in those actions to test his liability. One who owes a debt and refuses to pay it cannot resort to a court of equity for the purpose of having his liability determined in one action instead of in a number. Jones v. Harris, 90 Ark. 51, 117 S. W. 1077; Vandalia Coal Co. v. Lawson, 43 Ind. App. 226, 87 N. E. 47; 1 Pomeroy, Eq. Jur. § 250, and cases cited in notes.

[4] While in this case the appellant's petition does state that it had performed its legal duty in the transportation of the goods alleged to have been damaged, it does not negative the negligence of its connecting carriers, for whose dereliction the federal statute makes it liable. In this respect the petition is defective. An application for a writ of injunction in such cases should show affirmatively that the applicant is clearly entitled to the relief sought, and in order to do this the petition must negative every reasonable inference that might be drawn from the facts stated which would justify the refusal of the writ. Gillis v. Rosenheimer, 64 Tex. 243; Nussbaum v. Bell County, 97 Tex. 92, 76 S. W. 432; Cotulla v. Burswell, 22

Tex. Civ. App. 329, 54 S. W. 615; City of Paris v. Sturgeon, 50 Tex. Civ. App. 519, 110 S. W. 459. .

Appellant relies upon the case of Ry. Co. v. Dowe, 70 Tex. 5, 7 S. W. 368. In that case the suits sought to be restrained had not been instituted, but were threatened simply. The petition alleged that the threatened suits were based upon a number of time checks which had theretofore been issued by contractors and for which the railway company was in no way responsible. It was also shown that some of the suits had already been prosecuted to judgment against the railway company in the justice court, and facts were alleged indicating that the justice of the peace had acted arbitrarily, denying the railway company the rights to which the law entitled it, and further that each of the suits threatened, as well as those which had previously been prosecuted, were for $20 and less.

In this case the facts are materially different. Here the suits sought to be enjoined are actually pending. Citations have been served. Each one of the shipments which is made the basis of a separate suit involves a separate transaction or contract of shipment. If all of the suits were combined in one, which it may be conceded is possible under our practice, there would be no simplification of the issues either of law or of fact. The plaintiff would then still be under the necessity of proving his damages in each particular instance with as much certainty as if it were a separate suit, and the defendant would also be compelled to meet with a separate defense each separate cause of action. In the Dowe Case there was, according to the petition, but one question involved, and a determination of that question would have been decisive of all of the threatened suits. Such is not the case here. If, for instance, the first suit instituted were decided adversely to the plaintiff, it would furnish no precedent for a determination of either the issues of law or of fact involved in any of the remaining suits. Hence there is an absence of that identity or similarity of issues of law or fact which is generally referred to as justifying a court of equity in restraining the prosecution of a multiplicity of actions at law. Another feature which distinguishes this case from that of Ry. Co. v. Dowe is this: There all of the suits which had been brought, as well as those which were threatened, involved amounts of $20 and less, and for that reason no appeal could be prosecuted to the county court. In disposing of that case, the Supreme Court seemed to regard that feature as a strong reason why a court of equity should give the relief sought. It is in effect held that the absence of the power to appeal and have the essential questions tried before a tribunal presided over by persons well informed in the law should be regarded as a hardship entitling the complainant to some relief. In the case here under consideration, all of the suits, except two, are for amounts which will enable either party to prosecute an appeal to the Court of Civil Appeals. It has been held that this condition alone is sometimes sufficient cause for refusing to enjoin a multiplicity of actions at law. T. & P. Ry. Co. v. Kuteman, 79 Tex. 467, 14 S. W. 693.

It is urged by counsel for appellant, as the principal reason for desiring a consolidation of these suits in one, that it will be more convenient and less expensive to take the testimony necessary to present its defenses to the different complaints. This alone could hardly be considered as sufficient reason for issuing the writ prayed for in actions already commenced. The mere fact that the appellant might be enabled to save some costs or be spared some inconvenience by embracing in one set of depositions all of its testimony instead of having to take as many different sets as there are suits does not appeal to the equitable powers of the court. It may be conceded that the same employés handled all of the shipments in controversy, and are able to testify concerning all the facts necessary to establish the appellant's defenses, although this fact is not even alleged; it would still be necessary to take their depositions as to each separate shipment occurring at different times. The fact that one witness may be cognizant of all the facts concerning all of the shipments does not make those facts the same. They are just as distinct and separate as if they were separately within the knowledge of different individuals. The usual and common expenses for taking depositions, we know as a matter of law, are taxed as a part of the costs and must be paid in the end by the losing party. It is not alleged by the appellant in this instance that the Woldert Grocery Company is insolvent, or that it is attempting to prosecute those suits under pauper's affidavit. There is nothing alleged from which it can be inferred that if cast in the suit that company will not be able to pay all of the costs that may be adjudged against it.

It is further claimed that the connecting carriers for whose negligence appellant is sought to be held responsible are proper parties, and that a consolidation of the suits is desired for the purpose of bringing them into court. If those carriers are proper parties and as such should be brought into that litigation, they are as much within the reach of process from the justice court as from any issued from the district court.

The judgment of the district court is affirmed.