## GULF, C. & S. F. RY. CO. v. PEARLSTONE MILL & ELEVATOR CO.

### No. 10902.

Court of Civil Appeals of Texas. Dallas.

Jan. 3, 1931.

Rehearing Denied Feb. 7, 1931.

Company, to restrain it from prosecuting to judgment certain justice court cases then pending in a justice court of Dallas county, from filing and prosecuting a large number of other claims, each triable in a justice court, and to compel appellee to prosecute all claims in one suit. These several claims were for damages against appellant, growing out of shipments of wheat. Immediate relief was sought, by the issuance of a temporary writ of injunction, to restrain appellee both from the prosecution of said suits and from filing separate suits on the other claims. The judge of the court granted a temporary restraining order on appellant's filing the required bond, and set a day for a hearing to determine whether a temporary writ of injunction should issue. On the date set, the hearing was postponed, and the temporary restraining order continued in force for a later date, when the hearing was had, with the result that the court refused to grant to appellant the temporary writ of injunction. Appellee filed a motion to dissolve the restraining order and an answer to the merits of the case previous to the hearing. Appellant duly excepted to the order of the court, gave notice of appeal to this court, and at its request the temporary restraining order was continued in force until final decision on the appeal. The case is before this court on the issue as to whether the court erred in refusing to grant the temporary writ of injunction. The following is a sufficient statement of the facts:

From November 17, 1928, to March 11, 1930, appellee, owner of large grain elevators in the city of Dallas, shipped to various consignees over appellant's railway 98 cars of grain, each car under a separate contract of shipment with a separate waybill and bill of lading; 76 of these shipments were to consignees in the city of Dallas, 11 to consignees in the city of Fort Worth, 5 to consignees in the city of McKinney, 3 to consignees in the city of Sherman, and 3 to consignees in the city of Waco. On each shipment appellee claimed a shortage of grain, occurring through the negligence of appellant, of a value varying from 52 cents, the minimum claim, to $9.93, the maximum. Appellee contends that these various shortages were caused in different ways, principally, "by leaks in the cars in transit, by appellant permitting some wheat to remain in the cars when unloaded, and by wheat working out through open cracks into the space between the walls of the freight cars, where it remained when the cars were unloaded."

Appellant contends that no such shortage actually existed, and that the apparent shortage was the result of the inaccuracy of appellee's weights. In each shipment appellee first weighed on scales owned by it the empty car, loaded it with grain, and then weighed

Terry, Cavin & Mills, of Galveston, and W. P. Donalson, of Dallas, for appellant.

McCormick, Bromberg, Leftwich & Carrington, of Dallas, for appellee.

JONES, C. J.

An injunction suit was instituted in a district court of Dallas county by appellant, Gulf Colorado & Santa Fé Railway Company, against appellee, Pearlstone Mill & Elevator

the loaded car, and, by subtracting the weight of the empty car from the weight of the loaded car, arrived at what is claimed to be the weight of the grain loaded into the car. These weights were presented to appellant, accepted by it as the weight of the wheat, and placed this net weight on the bill of lading as representing the amount of grain in the car. When the car was received by the consignee, the loaded car was weighed on the consignee's scales, then unloaded, the empty car again weighed, and, by subtracting the weight of the empty car from the weight of the loaded car, the consignee arrived at the weight of the wheat received from appellee. In each of the 98 shipments, the net weight of the consignee was less than appellee's net weight. Appellee accepted the consignee's weights, as to the amount of grain received on each shipment, as correct, and, by subtracting the consignee's net weight from its own net weight, arrived at the alleged shortage. In all but three or four of the cars, the tare or empty car weight, as determined by the scales of the consignee, was greater than such weight as determined by the scales of appellee. Appellant contends that this difference in the weights of the empty cars is conclusive proof of its alleged inaccuracy in appellee's weights; while appellee contends that the difference is caused either by tne fact that appellant permitted some wheat to remain in the car after it was unloaded, or by the fact that wheat had sifted through openings in the inner wall of appellant's cars and remained unloaded between the walls of such car, thereby causing the increased weight of the empty car when weighed on the consignee's scales.

In each of the four suits that had been filed, appellee had given the required statutory notice and had prayed for the recovery of an attorney fee of $10, under article 2226, R. S. 1925, which allows, in suits to establish such claims, a reasonable attorney fee not exceeding $20. In the claims not then in suit, appellee had given the statutory notice and intended in the near future to file a separate suit in justice court on each of such claims, and to make demand in each suit for an attorney fee of $10; the amount of each claim, including the $10 attorney fee, is less than $20, and hence no case arising under these claims can be appealed to the county court. One of the suits had been prosecuted to judgment, in which appellee recovered $1.21 as the value of the shortage of the wheat and $10 as a reasonable attorney fee to prosecute such claim to judgment. This judgment had become final at the time this suit was filed and is not included in the petition for injunction.

In its petition for injunction, appellant alleged that it had a valid defense to each suit. The effect of this pleading in this respect, as we understand it, is that, upon appellee's railway scales the weight of the empty car was less than the correct weight would show, as conclusively shown by the weight of the same car on consignee's scales, and that the gross weight on appellee's scales was more than a correct weight would show, as is shown by such weight on consignee's scales. In no instance does the alleged difference of the weights of the empty cars by appellee and by its consignee account for all of the claimed shortage. Other matters, claimed to give to it the rights prayed for in the injunction suit, the petition states as follows:

"That the suits already brought and those which the Pearlstone Company is threatening to and will bring, have been and will be brought in some Justice Court which, by reason of the amounts of said claims, will have exclusive and final jurisdiction of said suits and the judgments that will be rendered therein, and from which judgment there can be no appeal; that if such suits are tried before a jury in the justice court where those now on file are pending, or in any justice court for that matter, plaintiff will be unable, in the trial of any such suits to have a jury charged as to the law applicable thereto, and if said suits are tried before the court such trial will be had before a judge not required to be learned in the law; that all of said suits now pending and all of such threatened suits are and will be between the same parties, plaintiff and defendant, and are and will be of the same general nature arising and growing out of the same general source, and are and will be governed by the same rules and will involve similar facts, and may be settled in a single suit; that the filing of those suits which the Pearlstone Company has already filed, and the filing of those suits which the Pearlstone Company is threatening to file, against plaintiff, has brought about and will bring about conditions and results against the material interest of plaintiff in that it will be forced to devote a great amount of time to the trial of such suits—the trial of each of such consuming, as the trial of said suit No. 5351, approximately a whole day —and its employes will be taken away from their work to testify as witnesses at the trial of said pending suits and threatened suits, and plaintiff will incur unusual and unnecessary costs and expenses as attorney's fees, witness fees, and other costs, the exact nature of which plaintiff cannot foretell and name at this time, all of which will be entirely out of proportion to the amounts involved in such pending suits and threatened suits, and far in excess of what the expense would be to plaintiff if one trial of all of such pending and threatened suits was had; and that unless the Pearlstone Company shall be restrained and enjoined from maintaining and prosecuting those suits already filed by it against plaintiff, and from filing, maintaining and prosecuting those suits which it is threatening to file, against plaintiff, as aforesaid,

plaintiff will be subjected to the inconvenience of defending a multiplicity of suits, will be annoyed and harassed thereby, and will suffer irreparable injury for which it has and will have no adequate remedy at law."

The evidence on the hearing established the fact that appellee intended to file separate suits on the remaining claims and to claim in each suit the sum of $10 as a reasonable attorney fee for prosecuting the claim. The evidence also established the fact that there was an inspector for railway scales, who regularly examined such scales to determine their accuracy, and, if such inspector should find scales not kept accurate, such scales were thrown out of service. The inspector is not an employee of appellant. An employee of appellee did the weighing on appellee's scales, and there were two such employees. It further appeared that appellee's scales were frequently tested and were kept in proper weighing condition.

The theory of appellant is that appellee has filed and is threatening to file a great many suits in a justice court for small shipment claims, in all of which the jurisdiction of the justice court is final, and that, though it has a valid defense to each of such claims, a jury cannot be guided as to the law of the case by a charge from the court, and unaided by the court must pass upon the law as well as the facts; that, by reason of the great number of suits and the statutory claim for an attorney fee, appellant will suffer a great loss in money and time in preparing and presenting its defense to each separate suit, and the time of the justice courts of Dallas county will thereby unnecessarily be consumed; that, as each claim is an alleged shortage in the shipment of a car of grain, all of the claims are similar; that, as each claim rests on the alleged negligence of appellant in respect to such shipment, and as its defense to each claim is that there was in fact no shortage, and such apparent shortage is caused from the inaccuracy of weights, all of said claims are supported by similar evidence, and therefore it has the right to invoke the jurisdiction of a court of equity to prevent a multiplicity of suits.

The theory of appellee is that the case is not one to invoke the equity jurisdiction of a court, on the doctrine of preventing a multiplicity of suits, for the reason that each claim presented rests on the alleged breach of a single contract of shipment, each resting on separate and distinct acts of negligence, requiring, as to each claim, separate and distinct proof to establish the fact of negligence, showing either that the freight car which carried the particular shipment leaked, or that appellant permitted wheat to remain in the car when unloaded, or that wheat worked through open cracks into the space between the walls of said car, where it remained unloaded; that either the establishment or failure to establish one or more of such alleged acts of negligence as to one claim would have no bearing or effect on establishing such alleged acts as to any other claim, or that the establishment or failure to establish appellant's defense of inaccuracy in weights as to one claim would have no bearing or effect upon establishing such defense as to any one of the other claims. These two opposing theories have been properly presented to this court by the respective parties.

It is true that appellant presents a valid defense in its plea that the apparent shortage was due to inaccuracies in weights, but manifestly, this is a defense that must be presented in defense of each claim, for the reason that, if it were shown that the scales were inaccurate in weighing one car of grain, this would not tend to prove that such scales, which were regularly tested and which were not put out of service by a weighing inspector, were inaccurate on a subsequent date, when another car of grain was weighed.

The specific question for decision then is, Can the equity powers of a district court be invoked to prevent a multiplicity of suits, under the facts of the instant case, and compel appellee to combine said claims in a single action? Mr. Pomeroy, in his work on Equity Jurisprudence (4th Ed.), presents a very able and exhaustive discussion of the question of when the equity powers of a court can be invoked to prevent a multiplicity of suits. This discussion is found in volume 1, §§ 243 to 275, inclusive. Upon a very careful review of the decisions in respect to the conditions under which powers of a court of equity can be invoked to prevent a multiplicity of suits, the author announces the effect of such decisions as follows: "All these possible conditions (under which such suits are allowed) may be reduced to the four following classes: 1. Where, from the nature of the wrong, and from the settled rules of the legal procedure, the same injured party, in order to obtain all the relief to which he is justly entitled, is obliged to bring a number of actions against the same wrongdoer, all growing out of one wrongful act and involving similar questions of fact and of law. To this class would belong cases of nuisance, waste, continued trespass and the like. 2. Where the dispute is between two individuals, A and B, and B institutes or is about to institute a number of actions either successively or simultaneously against A, all depending upon the same legal questions and similar issues of fact, and A by a single equitable suit seeks to bring them all within the scope and effect of one judicial determination. * * * Where a number of persons have separate and individual claims and rights of action against the same party, A, but all arise from some common cause, are governed by the same legal rule, and involve similar facts, and the whole matter might

be settled in a single suit brought by all these persons uniting as co-plaintiffs, or one of the persons suing on behalf of the others, or even by one person suing for himself alone. * * * 4. Where the same party, A, has or claims to have some common right against a number of persons, the establishment of which would regularly require a separate action brought by him against each of these persons, or brought by each of them against him, and instead thereof he might procure the whole to be determined in one suit brought by himself against all the adverse claimants as co-defendants."

It will be noted that in each class of cases it is made a condition precedent to invoking the jurisdiction of a court of equity, to prevent a multiplicity of suits, that each of the claims or demands, attempted to be presented by separate suits, must involve the same legal questions and be supported by similar facts.

It is manifest that the instant suit falls within class No. 2. In a further discussion of that branch of class No. 2, under which the instant case comes, the author says: "In the second branch of the same class the single defendant has brought a number of simultaneous actions at law against the plaintiff, all depending upon similar facts and circumstances, and involving the same legal questions, so that the decision of one would virtually be a decision of all the others. A court of equity may then interfere and restrain the prosecution of these actions, so that the determination of all the matters at issue between the two parties may be brought within the scope of one judicial proceeding and one decree, and a multiplicity of suits may thereby be prevented. It must be admitted that this exercise of the equitable jurisdiction is somewhat extraordinary, since the rights and interests involved are wholly legal, and the substantial relief given by the court is also purely legal. It may be assumed, therefore, that a court of equity will not exercise jurisdiction on this particular ground, unless its interference is clearly necessary to promote the ends of justice, and to shield the plaintiff from a litigation which is evidently vexatious. It should be carefully observed that a court of equity does not interfere in this class of cases to restrain absolutely and completely any and all trial and decision of the questions presented by the pending actions at law; it only intervenes to prevent the repeated or numerous trials, and to bring the whole within the scope and effect of one judicial investigation and decision. It should also be observed that if the pending actions at law are of such a nature or for such a purpose, that, according to the settled rules of the legal procedure, they may all be consolidated into one, and all tried together by an order of the court in which they or some of them are pending, then a court of equity will not interfere; since the legal remedy of the plaintiff is complete, certain, and adequate, there is no necessity for his invoking the aid of the equitable jurisdiction."

It is noted that in the above quotation there is defined the term, "depending upon similar facts and circumstances involving the same legal questions." The similarity of the facts and circumstances must be of such degree as that the "decision of one (claim) would virtually be a decision of all others." It necessarily follows that, in a case of the kind under review, where the evidence establishing one claim does not even tend to establish any of the other claims, a court of equity must deny the relief sought. If such were not the rule, then the result accomplished by granting the relief sought would be that, while there would be but one suit as to docket number, such suit in reality would be a bundle of separate and distinct suits, each of which, though similar in character to the others, still rests on separate and distinct facts, and requires the same quantum of evidence, either to establish or to defeat such claim, as would be required if such claims were in separate suits. Pomeroy's Equity Jurisprudence, supra, § 251½.

The courts of this state, in effect, have adopted Mr. Pomeroy's analysis of this question, and will compel a plaintiff, where he undertakes to enforce in a justice court by separate suits a number of claims, all involving the same issues of law and of fact, to desist from the prosecution of such separate suits and prosecute all such claims in one suit. G., H. & S. A. Ry. Co. v. Dowe, 70 Tex. 6, 7 S. W. 368; Steger & Sons Piano Mfg. Co. v. McMaster, 51 Tex. Civ. App. 527, 113 S. W. 337; Supreme Lodge of Fraternal Union of America v. Ray (Tex. Civ. App.) 166 S. W. 46, 48.

In each of the above-cited cases the establishment of each separate claim rested on the same evidence, both as to the establishment of the claim and as to the defense of same, and in each of the reported cases a decision as to one was virtually a decision as to the others. The existence of this fact in the Dowe Case, supra, is stressed by Judge Gaines, the opinion citing with approval § 254, Pomeroy's Equity Jurisprudence, above quoted.

■ In adjudicated cases of similar import to the instant case, in which each claim rested on evidence separate and distinct to that on which each other claim rested, the courts of this state have refused to compel the holder of such claims to combine them in a single suit. Chicago, R. I. & G. Co. et al. v. Liberal Elevator Co. et al., 182 S. W. 355; St. Louis Ry. Co. of Texas v. Woldert Gro. Co. et al., 162 S. W. 1174. While the decisions in the last two cases are by Courts of Civil Appeals, the Supreme Court in each case denied a writ of error. This could not have been the result had the Supreme Court dis-

approved the holding on the main issue in each of those cases. The reason underlying the holding in the two cases last cited is that, where each of a number of demands of one person against another rests on evidence separate and distinct from that on which each of the others rests, justice between the parties can best be subserved by permitting each claim to be prosecuted in a separate suit, for to compel such claims to be enforced by a single suit would tend inevitably to confuse the minds of the jury and to cloud the issues in each claim. An illustration may be had from the instant case: Suppose the relief for which appellant prays were granted and at the trial, as to every third shipment of grain made during the two years and more in which these shipments occurred, appellee established a prima facie case of shortage, and that appellant failed in its defense of error in weights, but in the remaining two-thirds of the shipments, while appellee made its prima facie case, appellant met such case by evidence on error of weights, sufficient to warrant a finding by the jury in its favor, can it be said that the jury would not be confused in passing upon evidence that showed correct weights and a shortage in certain instances and in certain other instances tended strongly to show only apparent shortage because of incorrect weight? Suppose, again, appellant should establish a shipment made in December, 1928, the apparent shortage was not real, but existed only because of an error in weighing. This established fact would not be admissible evidence by appellant to establish incorrect weights in a shipment of June, 1929; yet, if the appellant were allowed to prevail in this suit, this evidence would be before the jury in its consideration of the June shipment. Likewise, if on a shipment in January, 1929, appellee should establish the fact of correct weights, it would not avail appellee as evidence to establish a correct weight on a shipment in March, 1930; yet, if appellant should prevail in this suit, such evidence would be before the jury for its consequent effect on issues to which it was not relevant. Hence appears the wisdom of the rule requiring, as a condition precedent to invoke the jurisdiction of a court of equity in cases of this class, that each claim must rest on virtually the same evidence on which each of the other claims rests.

The case of G., H. & S. A. Ry. Co. v. Dowe, supra, clearly illustrates the class of cases in which a court of equity will lend its powers to prevent a multiplicity of suits. The case of Chicago, R. I. & G. Co. et al. v. Liberal Elevator Company et al., supra, clearly illustrates the class of cases in which a court of equity will not lend its powers to grant such relief. In the former case, the railway company had entered into one general contract with a number of contractors for certain constructions; some of these contractors had issued to laborers certificates for small sums of indebtedness, and these certificates had been assigned to Dowe. Each certificate represented a claim triable only in a justice court, and in nearly all of them the amount of the certificate was so small as to make the judgment final in the justice court. Dowe had filed and tried some of these suits and intended to file in the future in a justice court a separate suit on each claim. The defense of the railway company was (a) that, under the contract entered into with the contractors issuing the certificates, it was not liable for any claim for labor against any of the contractors, but that the debt was exclusively that of the contractor issuing the certificate; (b) that each certificate showed on its face that it was barred by the statute of limitation. All of the contractors were parties to the one contract entered into between themselves and the railway company. The first defense, it appears, rested solely on the construction of the one contract with the contractors; the second defense necessarily rested on the date of each certificate, and on the legal question as to whether the statute of limitation applied. So it appears that each claim rested on the same issues of law and on virtually the same issues of fact, so that a decision on one claim would be virtually a decision on all others.

In the Elevator Company Case, supra, the elevator company had claims against the railway company for shortage in a number of cars of coal purchased at mines in the state of Oklahoma and shipped to the elevator company by the railway company. There were several of these cars in which a small shortage was claimed in each. The defense of the railway company was that of error in weights and evaporation of the coal, damp from the mines at the time it was loaded, during its transportation to the elevator company. Each claim rested on a separate contract of shipment. As the establishment of each claim required separate and distinct evidence, and as the defense to each claim also required separate and distinct evidence, the railway company's plea for the issuance of a writ of injunction to prevent a multiplicity of suits was denied.

It clearly appears that in the Dowe Case all evidence necessary to establish the various claims was in the main that which was necessary to establish one claim, and hence there could be no confusion of issues in the minds of the jury. In the Elevator Case, it clearly appears that the evidence to establish one claim would not even tend to establish any other claim, and would be irrelevant to the issues in each other claim. If all claims were tried in one suit, there would necessarily be a confusion of the issues because of the admittance of so much irrelevant testimony as to the rights of the parties in each claim. In our view, it indisputably appears that the facts of the instant case do not bring,

it within the rule applied in the Dowe Case, but do bring it within the rule applied in the Elevator Case.

■ It is urged by appellant that, unless appellee be compelled to join these claims in one suit, a justice court judgment would be final, and appellant would be denied the right to have the law controlling the establishment of these claims charged to a jury. That is true, but the law is very simple, and to deny a justice court jurisdiction on such a ground would be, in effect, to abolish such courts.

■ Appellant further claims that it would suffer a hardship in the expense of trying several suits. This is not a ground for invoking the equity jurisdiction of a court in this character of cases. See authorities above cited.

■■ Finally, appellant claims that appellee is seeking to recover a reasonable attorney fee, alleged to be the sum of $10, in each case, and that this would work a manifest hardship on appellant, in that, the aggregate of the attorney fees recovered would far exceed the aggregate of the various claims. It is a sufficient answer to this statement that, in asking for attorney fees, appellee is only asserting its statutory right. Article 2226, R. S. 1925. The policy of this state is, as declared by such statute, to allow an attorney fee under certain conditions where a just claim is refused by the party owing same, and the injured party is compelled to collect such claim through the courts, provided the attorney fee allowed does not exceed the sum of $20. It is not for the courts to change the policy of this state as declared by its legislative enactments.

■ It clearly appears that appellant's right to the relief prayed for rests in such doubt that this court cannot say there was error committed by the trial court in refusing to grant the temporary writ of injunction, and the judgment is affirmed.

Affirmed.

LOONEY, J. (dissenting).

I dissent from the view of the majority, not on the law, but on its proper application to the facts of the case. Cases where courts of equity have either taken or refused jurisdiction in suits brought to prevent a multiplicity of suits, are so variant that, as said in Hale v. Allinson, 188 U. S. 56, 23 S. Ct. 244, 250, 47 L. Ed. 380, "It is difficult, if not impossible, to reconcile the cases." The court also said: "Cases in sufficient number have been cited to show how divergent are the decisions on the question of jurisdiction. It is easy to say it rests upon the prevention of a multiplicity of suits, but to say whether a particular case comes within the principle is sometimes a much more difficult task. Each case, if not brought directly within the principle of some preceding case, must, as we think, be decided upon its own merits and upon a survey of the real and substantial convenience of all parties, the adequacy of the legal remedy, the situations of the different parties, the points to be contested and the result which would follow if jurisdiction should be assumed or denied; these various matters being factors to be taken into consideration upon the question of equitable jurisdiction on this ground, and whether within reasonable and fair grounds the suit is calculated to be in truth one which will practically prevent a multiplicity of litigation, and will be an actual convenience to all parties, and will not unreasonably overlook or obstruct the material interests of any." This view as to the status of the law on the subject was approved in St. Louis, etc., Co. v. Woldert (Tex. Civ. App.) 162 S. W. 1174, 1176, and in Houston Heights v. Gerlach (Tex. Civ. App.) 216 S. W. 634, 637.

Pomeroy's Equity (3d Ed.) § 252 (4th Ed.) § 245, announced the general rule that courts of equity will interfere and take cognizance to prevent a multiplicity of suits in the following, among other, instances: " * * * 2. Where the dispute is between two individuals, A and B, and B institutes or is about to institute a number of actions either successively or simultaneously against A, all depending upon the same legal questions and similar issues of fact, and A by a single equitable suit seeks to bring them all within the scope and effect of one judicial determination. * * * " I think the case at bar should be controlled by this doctrine.

Appellee held 98 separate claims against appellant, ranging in amounts from 52 cents, the minimum, to $9.93, the maximum, each based on alleged loss of grain from carload shipments, originating in Dallas, made by appellee under separate but uniform bills of lading to different consignees, 76 to consignees within the city of Dallas, 11 to Fort Worth, 5 to McKinney, 3 to Sherman, and 3 to Waco. Suits were filed in a justice court on four of these claims, in each recovery was asked for damages and $10 attorney's fee. One of the suits was tried, consuming practically a whole day, resulting in judgment for appellee against appellant for $1.21 damages, $10 attorney's fee, and $4.40 court costs. The judgment was paid, hence that claim is not involved, but appellee is demanding trial of the three remaining suits, and is threatening to file separate suits in a justice court on the other 94 claims, in each of which judgment will be sought, not only for the damages claimed, but for $10 attorney's fee and costs of suit.

It is obvious that appellant can, with propriety, include all these claims in one suit, without violating the rule against misjoinder of causes of action, and, I think, it is equally obvious that the prosecution of 97 separate

suits will increase unnecessarily the expense, vexation, and annoyance always incident to litigation. The time consumed in trying one of these suits was approximately one day; this should be a reasonably correct measure of the time necessary to try each of the others, which, in my opinion, would be an inexcusable abuse of the instrumentalities of justice, as the manifest policy and trend of the whole law on the subject is to circumscribe and end rather than enlarge or protract litigation.

Evidently the ruling idea of the majority, in affirming the judgment of the trial court, was this: That the consolidation and trial of these claims in one suit would tend to produce confusion and cloud the issues as to each claim. As mentioned above, these claims could, without violating any procedural rule, be included in one action, whilst the prosecution of separate suits would necessarily cause expense, vexation, and annoyance far in excess of such as would be incident to the prosecution of one suit. The claims depend upon the same legal questions and on similar issues of fact; the shipments were made under uniform bills of lading (articles 890, 891, R. S. 1925); hence there is nothing in the contracts themselves to provoke confusion. Appellant's contention is that, no shortage actually exists, but that the shortage claimed is due to the inaccuracy of appellee's weights. The weighing was all done by two employees of appellee, and it appears that its scales were frequently tested, shipments were made, not on 97, but only on 43, separate days; so it seems that the facts, as to the correctness, whether or not of the weights, or the accuracy, whether or not of the scales, on the dates involved, should be ascertained from the testimony of these persons who did this weighing and testing, without any unusual or extraordinary confusion.

That a large number of claims, each based on a separate but similar contract requiring, in a legal sense, separate proof, will not deter a court of equity from consolidating and enjoining the prosecution of separate suits, is evident from the action of the Supreme Court of California in the case of Southern Pacific Co. v. Robinson, 132 Cal. 408, 64 P. 572, 12 L. R. A. (N. S.) 497. Suit was brought to restrain the prosecution of certain suits and the filing of others, based on claims for penalties of $200 each, alleged to have accrued from the violation by the carrier of the statutory right of passengers holding a particular kind of ticket to stop-over privileges, etc. It developed on hearing that 674 suits were pending in various justice courts, and about 2,300 other claims were held by defendants upon which they were threatening suits, altogether about 3,000 alleged causes of action, the aggregate penalties claimed being about $600,-000. The right of respondent to injunctive relief was sustained on two grounds. After stating the first, the court said: "And upon the

further ground that, in order to avoid a multiplicity of actions, equity will consolidate these 3000 alleged causes of action into one action and thus having taken hold of the matter will dispose of it in its entirety."

As the law furnishes no reliable formula for the disposition of particular cases belonging to this class of litigation, the doctrine being that each must be decided on its own merits, I am of opinion that, under the rule quoted from Pomeroy, as interpreted and applied by our Supreme Court in the case of G., H. & S. A. Ry. Co. v. Dowe, 70 Tex. 5, 11, 7 S. W. 368, the court below should have assumed jurisdiction, consolidated these claims, and enjoined the prosecution of separate suits, therefore that the judgment below should have been reversed and rendered for appellant.

On Motion for Rehearing.

JONES, C. J.

Appellant Gulf, Colorado & Santa Fé Railway Company, has filed a motion for rehearing, in which it is earnestly insisted that the majority of this court was in error in affirming the judgment of the lower court, and that such affirmance should be set aside and the cause reversed and remanded in conformity to the dissenting opinion filed herein. Appellant also requests that, if this relief cannot be granted, then the questions involved be certified to the Supreme Court.

We have carefully re-examined the record in this case, in the light of the dissenting opinion and the motion for rehearing, with the result that the majority of this court is of opinion that the issues of the case have been correctly determined. We shall review certain authorities, cited and relied upon in the dissenting opinion and insisted upon by appellant in its motion for rehearing, as announcing a rule contrary to the majority opinion. In the view of the majority of this court, the suit in equity filed in the lower court by appellant presented a case in which there exists a multiplicity of issues of fact to be tried, which the jurisdiction invoked cannot avoid or materially lessen; for which reason it is held in the original opinion that the equitable doctrine of combining in one suit a number of claims, and thereby preventing a multiplicity of suits, cannot be invoked in this case. Do the cited cases hold to the contrary?

The decision by the United States Supreme Court, in Hale v. Allinson, 188 U. S. 56, 23 S. Ct. 244, 253, 47 L. Ed. 390, is cited to show that no general rule has been established to determine when such doctrine of a court of equity may be invoked to prevent a multiplicity of suits, and that each case, unless it be "brought directly within the principle of some preceding case," must be decided upon its own merits. This statement must be accepted as

a general historic fact in reference to this character of litigation. However, an examination of the reported case and other adjudicated cases will show that there are some well-defined principles to which the courts should give recognition in passing upon any such suit. One principle is that the various claims, whether by a single person or by a number of persons, against a common defendant, must rest upon virtually the same facts, as to the controlling questions involved, as a condition to invoking the jurisdiction of a court of equity, and must not be such claims in which each rests upon its own particular facts. This very doctrine was given recognition by the opinion in the case now under discussion, and the relief sought was denied, because the claims attempted to be joined in one suit rested on separate facts, just as do the various claims in the instant case.

The learned judge, in delivering the opinion in the reported case, used language, in stating the reason for the denial of the equitable relief sought, just as potent to the instant case: "Is there, upon the complainant's theory of this case, any such common interest among these defendants as to the questions of fact that may be put in issue between them and the plaintiff? Each defendant's defense may, and in all probability will, depend upon totally different facts, upon distinct and particular contracts, made at different times, and in establishing a defense, even of like character, different witnesses would probably be required for each defendant, and no defendant has any interest with another. * * * In reality it [complainant's suit] is a congeries of suits with little relation to each other, except there is a common plaintiff who has similar claims against many persons."

The cases of Chicago, R. I. & G. Co. et al. v. Liberal Elevator Co. (Tex. Civ. App.) 182 S. W. 355, and St. Louis, etc., Ry. Co. of Texas v. Woldert Gro. Co. et al. (Tex. Civ. App.) 162 S. W. 1174, were decided on the application of the principle announced in the decision now under review, and the Supreme Court of this state approved the holding in each of those cases by the denial of a writ of error, for which reason we accepted such announcement of the law as a rule of decision in this state.

Greater stress, however, is placed on the decision of the Southern Pacific Co. v. Robinson, 132 Cal. 408, 64 P. 572, 12 L. R. A. (N. S.) 497. When the facts in this latter case are analyzed, it does not appear that a contrary rule is announced, but rather that such facts bring that case within the rule announced by our Supreme Court, in the case of Galveston, H. & S. A. Ry. Co. v. Dowe, 70 Tex. 5, 7 S. W. 368. At the time the reported case was decided, there was in force in the state of California a statute, the effect of which was to compel a railway company, when it sold a ticket for travel on its railways in such state, to issue to the purchaser of a ticket, on his request, a stop-over privilege for any intermediate station. If the railway company should refuse to honor such request, the statute assessed a penalty against the company in favor of the purchaser in the sum of $200, and authorized suit in his favor by such purchaser against the railway to enforce the penalty.

Robinson and others conspired and confederated together separately to purchase a great many tickets from some town, not stated, to Alamedo in said state, and to demand, on arriving at the city of Oakland, which was an intermediate station, a stop-over privilege, expecting that the railway company would not honor such request. The facts in reference thereto are briefly stated in the following language: "Appellants conspired and confederated together to create these alleged causes of action, with the sole end in view of securing the penalty or damages provided for in the aforesaid section of the Code, and that fact is a vital point in the case. The findings further established that these appellants did not desire the stop-over privilege, but, upon the contrary, in making their demands for such privilege, desired that their demands should be refused."

Some 3,000 of these tickets had been purchased and the same number of causes of action thereby attempted to be created. The parties to the conspiracy began to file separate suits in a justice court to enforce a claim of $200 in each case, when a bill in equity was filed to enjoin the prosecution of these suits, and the institution of the other suits, and to determine all matters in controversy between the railway company and the other parties in one suit. Jurisdiction of a court of equity to entertain such a suit was questioned. The court sustained the jurisdiction (1) on the ground that the bill clearly showed "a confederacy and combination formed and existing between these appellants to create and prosecute the aforesaid 3,000 causes of action against the plaintiff; and (2) upon the further ground that, in order to avoid a multiplicity of actions, equity will consolidate these 3,000 alleged causes of action into one action, and, thus having taken hold of the matter, will dispose of it in its entirety."

It appears that the fact of the purchase of the tickets, the demand for a stop-over privilege and its refusal, and the motive for which the purchase in each instance was made, rested on undisputed evidence. The principle of law involved was the same in each case. There could have been no confusion in the minds of a jury in respect to the issues of fact in any of the claims, if the claims were tried in one cause of action, for this issue rested on undisputed evidence. However, the case was decided on a question of law as to the improper motive which actuated the par-

ties in demanding the stop-over privileges. This issue of law was common to all the claims, and was virtually the only outstanding issue to be determined. Such condition is not present in this case. The motion for a rehearing is overruled. Mr. Justice Looney dissents.

As there exists the right in appellant to apply for a writ of error in this case, and as in the opinion of the majority of this court, every principle involved in this suit has been passed upon by the Supreme Court in its denial of a writ of error in the case of Chicago, R. I. & G. Co. v. Liberal Elevator Co., and St. Louis, etc., Co. v. Woldert, supra, we do not deem it a proper case to certify. Maxwell v. Hall, 114 Tex. 319, 267 S. W. 670; 3 Texas Jurisprudence, § 214, and authorities cited in note. The latter authority announces the practice on this question as follows: "It has been the practice to refuse to certify in all cases where a writ of error lies, inasmuch as a hearing by the Supreme Court on a writ enables that court to consider the entire record unrestricted by the findings of the Court of Civil Appeals as presented in a certificate."

The motion to certify is overruled.