**STEWART et al. v. ORSBURN et al.**

**No. 12645.**

Court of Civil Appeals of Texas. Fort Worth.

July 18, 1931.

Rehearing Denied Sept. 19, 1931.

Garnett & Garnett, of Gainesville, and King, Mahaffey, Wheeler & Bryson, of Texarkana, for appellants.

Adams & Jones, of Gainesville, for appellees.

BUCK, J.

This is an appeal from the action of the trial court in denying an injunction. Wirt Stewart and H. B. Howard, partners doing business under the firm name of Pittsburg Storage Company, sold some Porto Rican sweet potato plants to C. A. Loftis, as alleged, acting for the Gainesville Chamber of Commerce. The chamber of commerce had made arrangements with farmers of Cooke county to sell the potato slips to said farmers and to collect for them from said farmers, and Loftis agreed to stand good for such collection. 200,000 were delivered on or about May 20, 1930, and later, on or about May 24, an additional 160,000 were delivered f. o. b. Pittsburg, and later an increase in said amount was made to the total of 240,000. It is pleaded, and is supported by the evidence, that no names of the purchasers from Loftis or from the chamber of commerce were disclosed to the shippers at the time the order was given, and that the shippers did not know that they were to be distributed and sold to the farmers. On May 29, 1930, C. A. Loftis sent a check to Stewart and Howard, covering the three shipments, or $563.75. Later, it appeared that many of the plants died, and Loftis called E. T. Crozier, located at Fort Worth, and asked him to come up to Gainesville and inspect these potato plants which had died and those that were still living. Crozier was engaged in inspection work for the state department of agriculture during the year 1930, and was chief inspector, plant quarantine subdivision. As inspector for the state department of agriculture, he was authorized to issue certificates to growers of potatoes authorizing them to sell those plants as "State Certified potatoes." On arriving at Gainesville, he visited the chamber of commerce and met Mr. Egbert Thompson, secretary, who showed him a bunch of bad plants. The two visited a farm, and found that in a patch of probably two and one-half acres practically every plant was dead. After the inspection, Crozier made a trip to Pittsburg for the purpose of making an inspection of potato plants and beds that belonged to Howard and Stewart and also to Mr. Sewell. It was shown in the evidence that Howard and Stewart bought from Sewell a number of the plants. The evidence shows that he did not find anything in the way of disease in the plants. He testified that as a rule he was able to tell whether a sweet potato slip is infected, by observation. That in his opinion none of the slips which were sold from the beds belonging to Messrs. Howard and Stewart or the beds belonging to Mr. Sewell, in May, 1930, were infected with any kind of disease which they were required to be free of at the time they were loaded in the express office at Pittsburg.

It appears that a number of the purchasers of slips brought suit against Howard and Stewart for damages. In the application for injunctive relief, the plaintiffs alleged that R. L. White, on or about February 11, 1931, instituted suit in the justice court of Cooke county against the plaintiffs in this suit, and alleged "that on or about the 26th day of May, 1930, he purchased from the defendants 7,000 sweet potato slips to be shipped from Pittsburg, Texas, to Gainesville, Texas, for the purpose of being replanted and set out on land belonging to the plaintiff to produce a sweet potato crop on said land; that the plaintiff especially prepared said land at a great expense for the sweet potato crop in the sum of $25.00, and that he paid for the said plants $7.00, and $3.50 additional as express charges; that the said sweet potato plants reached Gainesville, Texas, a day or two after shipment, and were set out and planted by the plaintiff upon said plat of ground; that the said potato slips were diseased by dry rot, scale and other infection, and soon thereafter died and rotted in the ground; that said plat of land was about one acre and said diseased and infected plants infected plaintiff's said tract of land to such an extent that it is worthless for any of the purposes for which it was prepared, and that said tract of land has been damaged by reason of the negligent and fraudulent action of the defendants in shipping such diseased and infected plants, and that said acre of land was damaged in the sum of at least $50.00; that it cannot be used for many years for sweet potatoes or other like plants, and defendants are liable to plaintiff in all the sums mentioned above aggregating $85.50, for which sum and costs of suit this action is brought." The petition in the justice court is signed by Adams & Jones, at-

torneys for plaintiff. Plaintiffs further alleged that the defendant W. E. Moore, A. L. Orsburn, J. F. Casey, E. W. Johnson, J. D. Wariner, and J. B. Gregory have each instituted a separate suit in the justice court of precinct No. 1, Cooke county, against these plaintiffs, each of said suits being for a sum less than $100, and that other named parties were preparing to file similar suits in the justice court against these plaintiffs. That there was no difference in the allegations by each of said defendants except a difference in the amount paid by each for the purchase of the plants and express charges and the sums incurred for the preparation of the ground as well as the amount of damages alleged to be due by reason of the alleged infection. That all of the suits arose from a common cause, and from the purchase of the plants by C. A. Loftis, acting for the chamber of commerce, as claimed, and that, from the suits filed in the justice court by the defendants herein, there could be no appeal except to the county court. That the law did not require that either the justice of the peace or the judge of the county court should be learned in the law, and that plaintiffs could not have the questions involved passed upon by a district court or by a Court of Civil Appeals, or by the Supreme Court. Therefore, in the suit instituted in the district court, plaintiffs invoked the jurisdiction of the court to avoid having to defend against a multiplicity of suits and of suffering other irreparable injury. They alleged that, in the one suit upon which a hearing was had, they had to travel from Pittsburg by automobile and bring seven witnesses, and that the reasonable and ordinary cost for such transportation and the attendance on the trial was $10 a witness. And that, if they had to defend all of these some twenty-five or more suits, the court costs and other expenses would be a great and unwarranted expense against them, and that they would not have an opportunity to have an appellate court pass upon the questions involved. Therefore they prayed for a temporary restraining order or for a temporary injunction restraining the defendants W. E. Moore, A. L. Orsburn, R. L. White, J. F. Casey, E. W. Johnson, J. D. Wariner, and J. B. Gregory, during the pendency of this suit and until the further orders of this court, from further prosecuting the suits already filed by them and each of them against the plaintiffs, and that Adams & Jones be restrained by said restraining order and injunction from further prosecuting said suits already filed, and from instituting suits on behalf of other defendants who had not filed suits in the justice court. They further prayed that, if the defendants desired to prosecute their suits or claims further, they be required to file the same in a court having jurisdiction of the total amount, and that defendants be required to join their claims in a single suit and file it in a court having jurisdiction of the aggregate amount. That the defendants herein, except Adams & Jones, be required and authorized to implead in their alleged causes of action now pending, as well as in all of the other suits which are threatened to be filed and which are predicated on the claims hereinabove referred to and described, and that the plaintiffs be not prejudiced to file in this cause their plea of privilege to be sued in the county of their residence against the said claims of the said defendants.

A temporary restraining order was granted by Judge Boyd, district judge of Cooke county, but on a hearing said order was set aside and the prayer for injunction was denied. From this judgment the plaintiffs have appealed.

### Opinion.

From the testimony adduced on the trial there is sufficient evidence to sustain the conclusion that the slips shipped by the Pittsburg Storage Company, and owned by Wirt Stewart and H. B. Howard, were not infected, and that any infection of said plants arose after the planting in Cooke county. A number of witnesses testified for the plaintiffs in this suit, some of whom were experienced in the raising and planting of sweet potatoes, and practically all of them testified favorably to the plaintiffs.

The assignments of error urged by appellants set out that ten of the defendants have filed separate suits in the justice court, and that the other fifteen defendants were threatening to file separate and similar suits in the said justice court, the only difference in any of the said suits filed and threatened to be filed being in the amount of damages claimed by each of said defendants; and that all of the defendants in the suits which have been filed, as well as those which are threatened to be filed, were represented by the same law firm, and that the suits filed and those threatened to be filed all arose from a common source and are governed by the same legal rules, and that each of said defendants on the trial of his case in the justice court, in order to establish the alleged liability, would be compelled to offer, not only similar but the identical evidence offered by other defendants, and that each of said defendants, in order to establish the amount of damage claimed by him, would offer similar proof as that of each of the other defendants; and that the plaintiffs, in order to establish a valid defense, which they have, to each of said suits would offer identically the same evidence in each of these cases; and that it being further shown that each of the said ten suits already filed in the justice court, as well as the fifteen threatened to be filed, are each for an amount less than $100, and that therefore no appeal could be taken from any judgment in the justice court to a court higher than the county court.

In the testimony offered by plaintiffs below in the district court, it was shown by the evidence of John W. Culp, the county attorney of Cooke county, that a reasonable attorney's fee in the justice court in each of these cases would be $25. Plaintiffs also offered the testimony of George Pilgrim, an experienced sweet potato grower of Camp county, that he purchased some sweet potato plants from Howard and Stewart during the year 1930, and bought 65,000 of them at one time. That from his experience he could tell when a plant was diseased. That none of the plants he bought from them were diseased, and that he did not find any infection in his crop after planting it. Other witnesses testified to the same effect.

The sole question to be decided by this court is, Should the equity powers of the district court have been invoked to prevent a multiplicity of suits under the facts of this case, and have compelled the appellees to have combined their claims in a single action. Pomeroy on Equity Jurisprudence (4th Ed.) vol. 1, § 243, says: "All these possible conditions (under which suits are allowed) may be reduced to four following classes: * * * Class 3. Where a number of persons have separate and individual claims and rights of action against the same party (a) but all arise from some common cause, are governed by the same legal rule and involve similar facts and the whole matter might be settled in a single suit brought by all these persons uniting as co-plaintiffs or one of the persons suing on behalf of the others; or even by one person suing for himself alone."

In G., H. & S. A. Ry. Co. v. Dowe, 70 Tex. 5, 7 S. W. 368, 370, Judge Gaines, speaking for the Supreme Court of Texas, said:

"If it be said that a court of equity will only act after a decision favorable to the complainant in a court of law in which the judges are required to be lawyers, we can see the reason of it. But we do not think this rule should be applied to judgments of the county and justice courts under our system, when the amount in controversy is not such as to permit appeals to 'the appellate court.' The officers who preside in these tribunals are not required to be learned in the law. Their judgments, not appealed from, are conclusive between the parties as to the subject-matter of the particular suit in which they are rendered; but they cannot be held to affect in any manner any general right. Had it appeared from the plaintiff's petition that one of the suits against it had been brought in the district court, and had there been decided against it, or that from a judgment in the county court it had appealed to the court of appeals, and that court had affirmed the judgment upon the merits, then the presumption would have been great that it had no just defense to the other actions. * * * But no such presumption arises from a judgment of the justice or county court in this state, when by reason of the amount in controversy there can be no appeal. * * *.

"The rule is, that if in the tribunal, which has jurisdiction of the demands, there can be a consolidation, then it is the duty of the party to resort to this remedy, and equity will not interfere. In such a case there is an adequate remedy at law. But in this, though the demands separately are within the jurisdiction of the justice court, the aggregate amount exceeds that jurisdiction. Hence they cannot be consolidated. * * *

"In the very similar case of Railroad Co. v. Mayor, 54 N. Y. 159, an injunction was sustained as to all suits but one, until the rights of the parties could be determined in the action which was permitted to be brought. In Tarbox v. Hartenstein, 4 Baxt. [Tenn.] 78, the defendant had been an employee of the plaintiff, under a yearly contract, his wages being payable weekly, and had been discharged before the contract expired, on the ground that he failed to perform the stipulations on his part. He was paid up to the time of his discharge. He brought suit for his first week's wages accruing thereafter and recovered judgment, which was paid. He sued again for the next week's wages, and recovered a judgment, from which an appeal was taken. He brought also a third suit, and announced his purpose to bring a suit for each week's wages as it accrued, as long as by the terms of the contract it was to have continued in force. The court held that it was an entire contract for the year, though the wages were payable by the week, and that the judgment in the first suit was conclusive of his rights, and precluded any further recovery, and perpetually enjoined him from prosecuting the actions already brought, and from bringing any other. * * *

"We conclude, therefore, that the exceptions to so much of the petition as sought to enjoin the collection of the judgment of the county court should have been sustained, and that the exceptions should have been overruled to so much thereof as sought to enjoin appellee from bringing separate suits upon his demands; and that the court erred in sustaining the entire exceptions and in dissolving in whole the injunction and dismissing the bill."

In the case of Supreme Lodge of Fraternal Union of America v. Ray, 166 S. W. 46, 48, the Supreme Lodge of Fraternal Union of America instituted suit against David R. Ray and others, to enjoin them from maintaining and further prosecuting 39 separate suits brought by the defendants in the justice court of Fannin county. From a decree dismissing the petition on demurrer, the insurance union appealed, and, in reversing and remanding the case for a new trial, and holding that the union was entitled to have such suits consolidated and tried in one case, Justice Levy of

the Texarkana Court of Civil Appeals, speaking for the court, said:

"According to the allegations of the complaint, 39 persons are prosecuting separate actions in the justice court against appellant, all upon claims of a common origin, and predicated upon the single act of the association in putting into force and effect, on April 1, 1913, an increased rate of assessment, and depending upon the determination of the single question of the authority of the association to make the increased rate. If such suits are prosecuted further in the justice court, the peculiar situation is presented, differing from the ordinary cases, of requiring successive trial and retrial of the same question at the hands of the justice court, with the inconvenience, loss of time, and added expense that would follow. In view of the single issue, and as a means to afford relief against such loss, there is reasonably suggested, as being to the material interest of all the parties, the question of why one final decree between all the parties should not be had through a simplified procedure in consolidation of all the suits and issues into one suit between the parties. But the answer to the question must be, if the justice court retains the power to try the cases, that notwithstanding there is but a single and common issue between all the parties, yet administering relief against such irreparable loss that would probably follow many trials is legally impossible in such forum, because the law has circumscribed its power and does not warrant a consolidation of these suits or issues. It would seem to follow, therefore, that though the justice court has jurisdiction to try the subject-matter of each separate suit, a proper relief in the particular situation here could not legally be afforded in that forum against such irreparable injury that would follow. But if, in view of the single question at issue between all the parties, consolidation of the suits into one suit for final decree be to the material interest of all parties, and the single defendant be entitled, as a clear and positive right, to have administered proper relief against irreparable injury from many successive trials of the same issue, and there is want of an adequate remedy or means for administering such relief in the jurisdiction of the justice court, there is manifestly, as a fundamental proposition, a weakened power in the courts to administer justice if there is to be denied to such party aid from a competent court possessing adequate powers to meet the demands of justice. And it is not believed that, if there be a source or ground appearing of equitable jurisdiction, making a court of equity competent to assume or exercise jurisdiction, the denial of the proper exercise of equitable jurisdiction to such court would be warranted upon the sole fact that the justice court in the first instance is empowered to try each suit separately, without regard to the equitable remedy. * * *

"As a fundamental principle equity takes jurisdiction where it is made necessary to administer a preventative remedy, or when the courts of ordinary jurisdiction are made instruments of injustice, or when the right of action is given by law, but the remedy allowable by the court within its jurisdiction is inadequate to meet the demands of justice. Brown on Jurisdiction, § 196."

In this case, Justice Levy further says: "The text-books recognize the general rule to the effect that equity will enjoin the prosecution of numerous suits at law where all arise from some common source, and are governed by the same legal rule and involve similar facts, and the whole matter might be settled in a single suit, and it is apparent that the maintenance of many separate suits will result in loss and be against the material interests of the parties."

We think that in the instant case such conditions exist, and that the trial court should have granted the injunction, and required the plaintiffs to file joint suits, the aggregate of which would come within the jurisdiction of the district court.

In the recent case of G., C. & S. F. Ry. Co. v. Pearlstone Mill & Elevator Co. (Tex. Civ. App.) 37 S.W.(2d) 299, 305, Justice Looney dissented from the views of the majority, and in part said: "Pomeroy's Equity (3d Ed.) § 252 (4th Ed.) § 245, announced the general rule that courts of equity will interfere and take cognizance to prevent a multiplicity of suits in the following, among other, instances: '* * * 2. Where the dispute is between two individuals, A and B, and B institutes or is about to institute a number of actions either successively or simultaneously against A, all depending upon the same legal questions and similar issues of fact, and A by a single equitable suit seeks to bring them all within the scope and effect of one judicial determination. * * *' I think the case at bar should be controlled by this doctrine."

It will be noted that the Supreme Court in granting an application for writ of error said: "We incline to agree with the dissenting opinion."

We do not think it necessary to discuss this matter any further, and it is the order and decree of this court that the judgment of the trial court be reversed and remanded, with instructions to the trial court to issue the injunction prayed for, unless the defendants below join in a suit against the plaintiffs to collect the amounts claimed by the defendants.

### On Motion for Rehearing.

On motion for rehearing, appellees practically agree to the judgment of this court, but desire that the court state and hold defi-

nitely that, if the plaintiffs in the court below, and the prospective complainants against appellants, unite in a common suit, in which all of the plaintiffs are made parties plaintiff and the defendants parties defendant, such suit may be prosecuted to judgment. We do so hold, and so held in our former opinion.

There being no other questions for discussion, the motion for rehearing is overruled.