### LUTTRING et al. v. AMERICAN FRUIT GROWERS, Inc., et al.

No. 8850.

Court of Civil Appeals of Texas. San Antonio.

May 4, 1932.

Rehearing Denied May 25, 1932.

J. G. Foster and A. B. Crane, both of Raymondville, for appellants.

Seabury, George & Taylor, of Brownsville, Cunningham & Rabel, of Harlingen, and R. T. McCready, of Pittsburgh, Pa., for appellees.

FLY, C. J.

This is an appeal from an interlocutory order granting a temporary writ of injunction for the American Fruit Growers and L. B. Snavely, restraining George A. Luttring and 159 others, including 157 farmers, 2 lawyers, and the county judge of Willacy county, from instituting suit on any of 157 claims remaining after the two suits already tried and now on file on appeal in this court are deducted.

The grounds upon which the injunction was sought and obtained are:

"Plaintiffs further say that the same identical testimony, except as to acreage and the date of the contract and the amount of onions or tomatoes shipped, will be introduced by the defendants herein, in each of their cases, involving the identical same facts and the identical same law questions. That all of said cases, as these plaintiffs believe, involve amounts within the jurisdiction, under the constitution and statutes of this State, of the County or Justice Court of Willacy County. That said cases cannot be legally consolidated, because if they were consolidated in said County Court, then the aggregate of the amount thus involved in all of said cases would exceed the jurisdiction of said County Court of Willacy County, as provided for under the Constitution and Laws of this State. * * *

"These plaintiffs further say that all of the defendants above named, with the exception of those who have filed suits, the two attorneys above named and the County Judge, aforesaid, are now threatening to file suits, similar, on the exact same facts and involving the exact same questions of law as the cases above referred to. That some twelve or more petitions, in behalf of said respective defendants, have actually been prepared by said attorneys, and will, unless restrained by orders of this court, soon be filed in said County Court of Willacy County against these plaintiffs, for damages, which suits involve these plaintiffs charge, and will involve, when filed, the same identical facts and law questions as involved in all the other suits that have been filed. These plaintiffs, as hereinbefore alleged, have a valid defense to each and every one of said suits and claims of said defendants, which defense involves the same identical facts and same identical questions of law.

"These plaintiffs further say that while the defendants, hereinbefore named, signed at different times identical contracts, yet they acted together and had a community interest in the facts and in the law involved in every case; that the source of their causes of action, as alleged, is exactly common as to each and every one of them; that the evidence to support the one required to be introduced, will, with the exception as to the dates and the amount of shipments, be exactly the same; that the evidence as to the negligence and bad faith of these plaintiffs and the local market, and the damages resulting to them from the failure, as alleged by these plaintiffs to sell their products, will be exactly the same; and, in this connection these plaintiffs say that under the very terms of the defendants' contracts with these plaintiffs, it is and was provided and expressly agreed that the defendants' crops might be pooled in the marketing thereof by these plaintiffs, and, as a matter of fact, all of the products of all of the defendants were handled and shipped and sold during the months, or practically so, of April and the early part of May; that in the majority of cases, the defendants' or some of their products were pooled in shipping in order to make carload lots, and where the products were pooled they went in the same car and went to the same market and were handled in exactly the same identical way. That though said contracts between plaintiffs and defendants, as hereinbefore alleged, were signed at different dates, or at least many of them, they in fact constitute a general agreement between said farmers and defendants, and these plaintiffs, and represent in a general way one transaction involving and consisting of the separate contracts, but providing for the handling and pooling of all of their products, and, by reason thereof, each and all of the defendants have a community interest in each others contracts, and all the other defendants' contracts, with these plaintiffs, as well as in the facts and legal questions involved, as well also, the remedies sought to be obtained by them in seeking to recover damages of the same kind and character and nature and a single decree of this Court can settle the rights of all the parties, and such is the most practicable, convenient and less expensive to all of the parties for that purpose."

Appellees prayed for an injunction restraining the multiplicity of suits against them, setting out the great amount of costs that would accrue in each suit. The allegations show that all the claims described in the bill seeking the injunction grew out of

the same or similar transactions, that practically the same evidence will be offered to sustain each of the threatened suits. Under the English bill of peace there was a greater strictness required of allegation and proof of numerous suits growing out of the same transaction in favor of numerous parties, but in modern times the doctrine has been widened and it is the policy of equity, as enforced in American courts, to frown upon and prevent a multiplicity of suits and relieve the citizen of the cost and harassment arising from such suits. The institution of such a multiplicity of suits as are threatened in this instance would be oppressive and unjust. It appears that over 150 men holding similar claims, founded on practically the same contract, obtained by the same fraud, if any, executed by the defendant in the same fraudulent or negligent manner, are threatening to file suits.

One of the best expositions of the rules governing in obtaining relief from the oppression of many suits, which should and could be disposed of with a minimum of cost, and with equal and exact relief to each of the parties through a single suit, is made by Professor Pomeroy in his great work on Equity Jurisprudence. Vol. 1, §§ 268–274. We quote from section 268, page 498: "In that particular family of suits, whether brought on behalf of a numerous body against a single party, or by a single party against a numerous body, which are strictly and technically 'bills of peace', in order that a court of equity may grant the relief and thus exercise its jurisdiction on the ground of preventing a multiplicity of suits, there does and must exist among the individuals composing the numerous body, or between each of them and their single adversary, a common right, a community of interest in the subject-matter of the controversy, or a common title from which all their separate claims and all the questions at issue arise; it is not enough that the claims of each individual being separate and distinct, there is a community of interest merely in the question of law or of fact involved, or in the kind and form of remedy demanded and obtained by or against each individual. * * * It must be admitted, as a clear historical fact, that at an early period the court of chancery confined this branch of its jurisdiction to these technical 'bills of peace'. The above rule, as laid down in them, was for a considerable time the limit beyond which the court would not exercise its jurisdiction in cases belonging to the third and fourth classes. For this reason may passages and dicta found in the judicial opinions of that day must be regarded as merely expressing the restrictive theory which then prevailed in the court of chancery, and as necessarily modified by the great enlargement and extension of the jurisdiction which has since taken place; and

at all events, these dicta and incidental utterances should, on any correct principle of interpretation, be treated as confined, and as intended to be confined, to the technical 'bills of peace' in which they occurred, or concerning which they were spoken. Notwithstanding this general theory of the jurisdiction which prevailed at an early period, it is certain that even then the court sometimes transcended the arbitrary limit, and exercised the jurisdiction, where there was no pretense of any community of right, or title, or interest in the subject-matter."

In section 269 the author says: "This early theory has, however, long been abandoned. The jurisdiction, based upon the prevention of a multiplicity of suits, has long been extended to other cases of the third and fourth classes, which are not technically 'bills of peace', but 'are analogous to' or 'within the principle of' such bills. Under the greatest diversity of circumstances, and the greatest variety of claims arising from unauthorized public acts, private tortious acts, invasion of property rights, violation of contract obligations, and notwithstanding the positive denials by some American courts, the weight of authority is simply overwhelming that the jurisdiction may and should be exercised, either on behalf of a numerous body of separate claimants against a single party, or on behalf of a single party against such a numerous body, although there is no 'common title,' nor 'community of right' or of 'interest in the subject matter,' among these individuals, but where there is and because there is merely a community of interest among them in the questions of law and fact involved in the general controversy, or in the kind and form of relief demanded and obtained by or against each individual member of the numerous body. * * * While the foregoing conclusions are supported by the great weight of judicial authority, they are, in my opinion, no less clearly sustained by principle. The objection which has been urged against the propriety or even possibility of exercising the jurisdiction, either on behalf of or against a numerous body of separate claimants, where there is no 'common title,' or community 'of right' or 'of interest in the subject-matter,' among them, is, that a single decree of the court cannot settle the rights of all; the legal position and claim of each being entirely distinct from that of all the others, a decision as to one or some could not in any manner bind and dispose of the rights and demands of the other persons, and thus the proceeding must necessarily fail to accomplish its only purpose,—the prevention of further litigation. This objection has been repeated as though it were conclusive; but like so much of the so-called 'legal reasoning' traditional in the courts, it is a mere empty formula of words without any real meaning, because it has no foundation of fact,—it is simply un-

true; one arbitrary rule is contrived and then insisted upon as the reason for another equally arbitrary rule. The sole and sufficient answer to the objection is found in the actual facts. The jurisdiction has been exercised in a great variety of cases where the individual claimants were completely separate and distinct, and the only community of interest among them was in the question at issue and perhaps in the kind of relief, and the single decree has without any difficulty settled the entire controversy and determined the separate rights and obligations of each individual claimant."

The text is an admirable statement of the rule governing in such cases, and stated in a vigorous, forceful, and convincing manner. It has justice, equity, and reason to sustain it, and, if any court has carelessly departed from the principles, the large majority of modern courts sustain the beneficent humanitarian rule, which is the wholesome rule of equity. Every well-considered case in Texas has followed the rule formulated by Pomeroy as herein quoted. Galveston, H. & S. A. Ry. Co. v. Dowe, 70 Tex. 5, 6 S. W. 790; Supreme Lodge v. Ray (Tex. Civ. App.) 166 S. W. 46; Stewart v. Orsburn (Tex Civ. App.) 41 S.W. (2d) 1008, 1009.

In the Dowe Case the Supreme Court held: "The principle has been extended to cases where a great number of parties, having a common cause of action against one, growing out of the same injury and depending upon the same questions of law and fact; and they have been permitted to join in the same action in order to prevent a multiplicity of suits. This rule was applied in this court in Blessing v. City of Galveston, 42 Tex. 641, and in George v. Dean, 47 Tex. 73. Also where numerous persons have claims of the same character, growing out of the same alleged wrong against one, a bill will lie in his favor against all the claimants to settle all the demands in the same suit."

In an admirable opinion in the Stewart Case, herein cited, the late Judge Buck copied from and fully-indorsed the text from Pomeroy; and Judge Levy, in the Ray Case, said: "The text-books recognize the general rule to the effect that equity will enjoin the prosecution of numerous suits at law where all arise from some common source, and are governed by the same legal rule and involve similar facts, and the whole matter might be settled in a single suit, and it is apparent that the maintenance of many separate suits will result in loss and be against the material interests of the parties. 1 Pomeroy, Eq. Jur. (3d Ed.) §§ 245–256; 2 Story, Eq. Jur., § 854, and others; 1 High on Injunctions, §§ 12, 62–65."

In the case of Gulf, C. & S. F. R. Co. v. Pearlstone Mill & Elevator Co. (Tex. Civ. App.) 37 S.W.(2d) 299, a majority of the Dallas court seem to be in antagonism with Pomeroy and other Texas courts, but Judge Looney supported the doctrine in a strong opinion with which the Supreme Court seem to agree in granting a writ of error.

In most, if not all, of the cases examined by us, the number of threatened suits were many times less numerous than in this. In one of the Texas cases sustaining the right for a court of equity to prevent a multiplicity of suits arising out of practically the same state of facts, ten cases had been filed and only fifteen more threatened. The facts in the case now before this court show that two cases have been filed, and it is frankly admitted that more than one hundred and fifty are in course of incubation and will certainly arrive in courts of proper jurisdiction. It exhibits a multiplicity of suits many times multiplied. In these perilous times such a multitude of suits with their attendant multiplied costs would wreck any ordinary fruit corporation, be it domestic or foreign. No litigant should be subjected to such an oppressive and inexcusable assault upon its rights of property, however strongly fraud and negligence may be alleged. The allegations, though proved will not transform the corporation into an outlaw against whose property confiscation and appropriation would be a virtue. No doubt, as contended by appellants, hardships and difficulties will arise from a consolidation of the many claims, but, on the other hand, a consolidated trial of the consolidated cases would lessen the costs and salvage time of court and individuals. In addition, it would prevent a grievous wrong to a defendant through the medium of courts.

We have considered this question only from the standpoint of the litigants themselves, and, while it is a matter of vital importance to them, it is also a question of vast importance to the taxpayers of the state, whose tax money pays the judges, the juries, and officers of the court. The public can claim protection from a monopoly of the time of the courts by litigious men who stand for their own interests regardless of the rights of others. A multiplicity of suits, not only vexes and harasses the unfortunate defendant, but tramples upon and impairs the rights of the public. Public policy demands a repression of a multiplicity of suits on the same subject, based on the same or similar evidence. Vexatious exasperating litigation does not meet with the approbation of the state, whose citizenship is disturbed and expenses increased thereby. Injunctions to restrain a multiplicity of suits is, not only permitted, but favored, by the courts. Section 518, vol. 1, Joyce on Injunctions. The author cites the Texas cases.

The judgment is affirmed.