# NO. 12-21-00122-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *BETTY HENRY,*<br>*APPELLANT* | *§* | *APPEAL FROM THE 114TH* |
| *V.* | *§* | *JUDICIAL DISTRICT COURT* |
| *LILLIAN BOWENS BROOKS,*<br>*APPELLEE* | *§* | *SMITH COUNTY, TEXAS* |

## *OPINION*

Betty Henry, individually and as personal representative of the Estate of Jerry Henry, appeals the trial court's denial of her reimbursement claims in a partition suit filed by Lillian Bowens Brooks. Betty raises three issues on appeal. We affirm in part and reverse, render, and remand in part.

## BACKGROUND

Lelia Scott Bowens Henry married Jerry Henry in 1995. During their marriage, Lelia and Jerry purchased an acre of land at 7943 F.M. 2908 in Smith County (the Property) from some of Lelia's family members (the Scotts) and built a home. The purchase loan was paid off in 2001. At a later date, the couple procured a new loan secured by a deed of trust on the Property.

Lelia died on January 20, 2014, leaving her entire estate to her daughter, Lillian. Therefore, Jerry and Lillian became co-owners, each owning one-half of the Property.

Because the Property was Jerry's and Lelia's homestead, Jerry exercised his constitutional right to a life estate in the Property and continued to live in the home. At the time of Lelia's death, the Property was still subject to the loan, which required Jerry to maintain insurance on the Property.

In 2015, Jerry married Betty, and the couple continued to reside on the Property. In 2019, Jerry entered into a mediated settlement agreement (MSA) resulting in the purchase of an easement from the Scotts and Lillian for $4,000. The easement allowed access to the Property's garage.

Jerry died on January 28, 2020, and he left his estate to Betty. Therefore, Lillian and Betty became co-owners, each owning one-half of the Property. Betty continued to reside on the Property.

In March 2020, Lillian filed suit to partition the Property. In her petition, Lillian unequivocally confirmed that she had no desire to own the Property with Betty and that she desired to sell the Property to the highest bidder. Betty, individually and on behalf of Jerry's estate,[1] counterclaimed, seeking reimbursement for funds expended by either Jerry or Betty on the Property that benefitted Lillian. Betty specifically sought reimbursement for payments on the mortgage principal, insurance, interest paid after Jerry's death, and the easement purchased to provide access to the Property.[2]

The case proceeded to a bench trial. After the evidence closed, the trial court requested briefing from both Lillian and Betty. The trial court subsequently found that Betty was not entitled to reimbursement. Betty requested findings of fact and conclusions of law and later filed a Notice of Past Due Findings of Fact and Conclusions of Law. The trial court provided findings and conclusions in June 2021. This appeal followed.


## REIMBURSEMENT

In three issues, Betty challenges the trial court's judgment denying her reimbursement claims against Lillian. In issue one, Betty asserts entitlement to reimbursement for money spent during Jerry's lifetime that paid mortgage principal and insurance. In issue two, Betty asserts entitlement to reimbursement for money spent after Jerry's death for mortgage principal and interest. And, in issue three, Betty asserts entitlement to reimbursement for the easement purchased via the MSA with the Scotts and Lillian several years after Lelia's death. We address each of Betty's issues in turn.

---

[1] Betty is the executor of Jerry's estate.

[2] At the bench trial, Betty sought reimbursement for interest paid during Jerry's life and taxes paid. On appeal, she no longer seeks reimbursement for these expenses.

**Standard of Review**

In an appeal from a judgment after a bench trial, we accord the trial court's findings of fact the same weight as a jury's verdict. *Milton M. Cooke Co. v. First Bank & Trust*, 290 S.W.3d 297, 302 (Tex. App.—Houston [1st Dist.] 2009, no. pet.); *see Brown v. Brown*, 236 S.W.3d 343, 347 (Tex. App.—Houston [1st Dist.] 2007, no pet.). Unchallenged findings of fact are binding on an appellate court unless the contrary is established as a matter of law or there is no evidence to support the finding. *Walker v. Anderson*, 232 S.W.3d 899, 907 (Tex. App.—Dallas 2007, no pet.); *see McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986); *Mullins v. Mullins*, 202 S.W.3d 869, 874, 876-77 (Tex. App.—Dallas 2006, pet. denied). However, when an appellant contests a trial court's findings of fact, an appellate court reviews those fact findings by the same standards it uses to review the sufficiency of the evidence to support a jury's findings. *See Pulley v. Milberger*, 198 S.W.3d 418, 426 (Tex. App.—Dallas 2006, pet. denied).

To determine whether legally sufficient evidence supports a challenged finding, we must consider evidence that favors the finding if a reasonable factfinder could consider it, and we must disregard evidence contrary to the challenged finding unless a reasonable factfinder could not disregard it. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We sustain a legal insufficiency, or "no evidence," point when the record demonstrates (1) a complete absence of evidence of a vital fact; (2) that the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) that the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) that the evidence conclusively establishes the opposite of the vital fact. *Id.* at 810. More than a scintilla of evidence exists when the evidence supporting the finding, as a whole, rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise or suspicion of a fact. *Driskill v. Ford Motor Co.*, 269 S.W.3d 199, 203 (Tex. App.—Texarkana 2008, no pet.) (citing *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003)).

Regarding a reimbursement claim, we give great latitude to the trial court in determining the value of the claim. ***Penick v. Penick***, 783 S.W.2d 194, 197 (Tex. 1988).[3] Because of a reimbursement claim's equitable nature, the trial court considers all facts pertaining to the transaction in making its determination, and we reverse a trial court's decision only when it abuses its discretion. ***Id.***

We review conclusions of law by the trial court de novo. ***Brown***, 236 S.W.3d at 348. "Failing to correctly apply the law is an abuse of discretion." ***F.F.P. Operating Partners, L.P. v. Duenez***, 237 S.W.3d 680, 694 (Tex. 2007). We affirm the judgment if it can be upheld on any legal theory supported by the evidence. ***In the Interest of W.E.R.***, 669 S.W.2d 716, 717 (Tex. 1984) (per curiam).

## Life Estate

A surviving spouse has the right to occupy the homestead for the remainder of his life. *See* TEX. CONST. art. XVI, § 52. So long as the surviving spouse elects to use or occupy the homestead, the homestead is not subject to partition among the heirs of the deceased. ***Id.*** This right of the surviving spouse has been equated with that of a legal life estate or a life estate created by operation of law. ***Sargeant v. Sargeant***, 15 S.W.2d 589, 593 (Tex. 1929).

A life estate is a freehold interest in land rather than an estate of inheritance. ***Id.*** The homestead life estate vests with the surviving spouse at the time of the deceased spouse's death and continues even if the deceased has willed the property to another. *See **Copeland v. Tarrant Appraisal Dist.***, 906 S.W.2d 148, 151 (Tex. App.—Fort Worth 1995, writ denied). So long as he does not abandon the right, the surviving spouse has exclusive possession of the premises for life. ***Sargeant***, 15 S.W.2d at 594; *see also **Copeland***, 906 S.W.2d at 152 (surviving spouse's right to occupy the marital homestead is "cherished and consistently affirmed by Texas courts.").

The surviving spouse is entitled to all "fruits, rents, and revenues" obtained from the property during his life. ***Sargeant***¸ 15 S.W.2d at 594. He can sell his life estate rights to another. ***Brokaw v. Richardson***, 255 S.W. 685, 688 (Tex. Civ. App.—Fort Worth 1923, no writ). He also is entitled to reimbursement from the remainderman for paying down the principal

---

[3] We acknowledge that ***Penick*** addressed a reimbursement claim in the context of the division of a marital estate as opposed to the division presented here. *See **Penick v. Penick***, 783 S.W.2d 194, 197 (Tex. 1988). Nevertheless, regardless of the context in which a reimbursement claim is presented, it remains an equitable claim. Therefore, cases addressing a reimbursement claim in the marital estate context are instructive.

4

of an existing encumbrance.  *Id.*  He is not required to insure the property.  ***Hill v. Hill***, 623 S.W.2d 779, 781 (Tex. App.—Amarillo 1981, writ ref'd n.r.e.).

The surviving spouse does have some responsibilities to preserve the property for the remainderman, such as paying interest on existing encumbrances and maintaining the property. *See* ***Dakan v. Dakan***, 83 S.W.2d 620, 625 (Tex. 1935); *see also* ***Hunter v. Clark***, 687 S.W.2d 811, 815 (Tex. App.—San Antonio 1985, no writ); ***Brokaw***, 255 S.W. at 688.   The surviving spouse has no right of reimbursement for the payment of taxes on the property.  ***Sargeant***, 15 S.W.2d at 594.  And the surviving spouse is not entitled to reimbursement for improvements. ***Hunter***, 687 S.W.2d at 815.

### Tenant in Common

A tenant in common shares the property with another.  *See* ***Gonzalez v. Gonzalez***, 552 S.W.2d 175, 178 (Tex. Civ. App.—Corpus Christi 1977, writ ref'd n.r.e.).   All tenants in common have a duty to preserve the property*.*  ***Wooley v. West***, 391 S.W.2d 157, 160 (Tex. Civ. App.—Tyler 1965, writ ref'd n.r.e.).   Thus, if one cotenant pays more than her share of a mortgage or "makes an outlay for necessary or proper preservation" of the property, she is entitled to reimbursement from her cotenants.  ***Id.***

All cotenants are entitled to occupy the property, and that right extends to every part of the property.  ***Sayers v. Pyland***, 161 S.W.2d 769, 771 (Tex. 1942).  Neither tenant in common has a right to occupy a particular part of the property to the exclusion of the other.  ***Id.***  While a tenant in common generally is allowed possession of the property rent-free, it does not follow that she will never be responsible for rent or reimbursement even upon her own possession.  *See* ***Potka v. Potka***, 205 S.W.2d 51, 55 (Tex. Civ. App.—Waco 1947, writ ref'd n.r.e.).   To determine whether rent or reimbursement is owed because of the use of one tenant in common, the trial court examines whether a request to use the property or objection to the cotenant's use of the property was made by one of the other cotenants and whether the cotenant occupying the property acted with hostility or otherwise exercised control over the property to the exclusion of the other cotenants. *See id.*

### Right of Reimbursement

Reimbursement is an equitable claim.  ***Dakan***, 83 S.W.2d at 627; ***Anderson v. Gilliland***, 684 S.W.2d 673, 675 (Tex. 1985).  To establish a claim for reimbursement, a party must show that "(1) an estate has contributed to another estate, (2) the contributing estate has not received a

*quid pro quo*, and (3) the benefitted estate has thereby been unjustly enriched." ***Penick***, 783 S.W.2d at 197.

When one estate improves another estate, the claim for "reimbursement is in the nature of a charge upon the property so improved." ***Dakan***, 83 S.W.3d at 627. The right of reimbursement is a vested economic right. ***Heggen v. Pemelton***, 836 S.W.2d 145, 148 (Tex. 1992). A vested right is a constitutionally protected property right. *See **Subaru of America, Inc. v. David McDavid Nissan, Inc.***, 84 S.W.3d 212, 219 (Tex. 2002). "A right has been well defined to be a well-founded claim, and a well-founded claim means nothing more nor less than a claim recognized or secured by law." ***Mellinger v. City of Houston***, 3 S.W. 249, 253 (Tex. 1887).

"As a general rule, an estate's personal representative may bring the decedent's survivable claims on behalf of the estate." ***Smith v. O'Donnell***, 288 S.W.3d 417, 421 (Tex. 2009). Further, the Texas Supreme Court has held that a purely economic loss claim which accrues prior to the decedent's death is survivable. *See **id*** at 420. Because of equitable considerations, the law frowns upon requiring a multiplicity of suits. ***Luttring v. Am. Fruit Growers***, 49 S.W.2d 980, 982 (Tex. Civ. App.—San Antonio 1932, writ dism'd). Generally, Texas law favors resolving all matters between the same parties and between all parties as to the same subject matter in one suit. ***Adams v. First Nat'l Bank of Waco***, 178 S.W. 993, 996 (Tex. Civ. App.—Austin 1915, no writ).

## Reimbursement of Mortgage Principal and Insurance Premiums Paid During Jerry's Life

In her first issue, Betty challenges the trial court's denial of her reimbursement claim for mortgage principal and insurance premiums paid by Jerry after Lelia's death. Although Jerry also was a tenant in common with Lillian, Betty sought reimbursement from Lillian based on Jerry's constitutional life estate.

Betty and Lillian stipulated that Jerry, as Lelia's surviving spouse, had a constitutional life estate in the Property. Jerry, first alone and then with Betty after their marriage, continued to reside on the Property throughout his life. Lillian had not been allowed to live on the Property after Lelia's death.

Betty introduced the loan history for the Property into evidence. The loan history showed that the principal on the note was reduced by at least $24,538.53[4] from January 20, 2014 (Lelia's date of death) to January 28, 2020 (Jerry's date of death). Betty also testified at the bench trial that $19,136.06 was paid for insurance. The loan history for the property contains charges for "Hazard Disb" from the loan's escrow account that, if attributed to insurance premiums, covers the amount asserted by Betty. She further testified that Jerry made payments on the loan after Lelia died, and after Jerry and Betty married in the latter part of 2015, they began making payments jointly. Finally, Betty testified that Lillian never reimbursed either her or Jerry for Lillian's half of the expenses.

At trial, Lillian did not dispute the amounts paid during Jerry's life. Instead, Lillian testified that she had wanted to sell the house since Lelia's death in 2014, and she never intended to keep the house.

The trial court found that Jerry voluntarily occupied the Property and exclusively benefitted from the use and enjoyment of the Property. The trial court also concluded that Jerry's estate does not have a reimbursement claim due from Lillian.

While the trial court's finding that Jerry voluntarily occupied the Property and exclusively benefitted from the use and enjoyment of the property is supported by the evidence, it is of no import. Because Jerry exercised his right to a constitutional life estate in the Property, Jerry was entitled to exclusive possession of the premises for life. *See **Sargeant***, 15 S.W.2d at 594. At trial, Betty established that Jerry paid $43,674.59, consisting of $24,538.53 for reduction in principal on the mortgage plus $19,136.06 for insurance. She further established that the contributing life estate was not provided a *quid pro quo* because Jerry already was entitled to exclusive possession of the Property. Furthermore, Betty showed that, based on her ownership of one-half of the Property, Lillian was unjustly enriched by $21,837.30, which is half

---

[4] On appeal, Betty claims that Jerry made payments that reduced the principal on the mortgage by $30,080.70. As support, she cited the loan history and her testimony. The loan history covered the time period of January 2015 to December 2020. Betty produced no evidence of the amount of principal paid on the note from January 2014 to January 2015. However, she produced evidence that the mortgage principal was reduced by $24,538.53 from January 2015 to the date of Jerry's death. She also testified that the principal on the mortgage was reduced by $30,080.70 from January 2015 to December 2020, but, as Jerry passed away on January 28, 2020, Betty's testimony includes payments made after Jerry's death. We have reviewed the record and only find evidence of $24,538.53 being paid for principal on the mortgage from Lelia's death to Jerry's death.

of the amount paid by Jerry after Lelia's death. *See* **Penick**, 783 S.W.2d at 197. Therefore, Betty established a right to reimbursement from Lillian in the amount of $21,837.30.

Lillian contends that any reimbursement claim dissipated upon Jerry's death. The parties agree that the issue of whether a reimbursement claim based on a life tenant paying mortgage principal and insurance passes to the estate upon the life tenant's death is a matter of first impression. As support for her position that the reimbursement claim did not pass to Jerry's estate, Lillian cites *In re Hernandez,* No. 05-16-01350-CV, 2018 WL 525762 (Tex. App.—Dallas Jan. 24, 2018, no pet.) (mem. op.).

In *Hernandez*, Patricia Hernandez died, leaving her husband and a son from a previous marriage. *Id.* at *2. In her will, she left property to her husband to do with as he desired, and upon the death of her husband, the rest and residue of her estate to her son. *Id.* The son claimed that his mother bequeathed a life estate in her husband with the son receiving the remainder. *Id.* at *3.

On appeal, our sister court in Dallas found that Patricia did not bequeath a life estate to her husband, but instead bequeathed a fee simple determinable to her husband with an executory interest to her son in fee simple absolute. *Id.* at *8. However, when discussing life estates, the Dallas court stated, "Because a life estate terminates upon the death of the life tenant, the power to dispose of the property does not empower a life tenant to devise any of the property that remains at his death." *Id.* at *6.

Lillian asserts that *Hernandez* shows that ". . . Jerry's death automatically divests Jerry's estate of the constitutional life estate and any rights he had pursuant to it, causing that property to pass to [Lillian] in fee simple." She continues, "There are no rights to be exercised by Betty because they no longer exist." We disagree. Lillian attempts to extend *Hernandez* too far. First, the Dallas court found that the conveyance did not involve a life estate. But second, and more importantly, the Dallas court discussed the power to dispose of property, and if a life tenant is provided some authority to dispose of property, that right must be exercised during his life or it is forfeited. *See id.*

Here, we grapple with the survivability of a reimbursement claim. The reimbursement claim became a vested right when Jerry paid on the mortgage principal and for the insurance. *See* **Heggen**, 836 S.W.2d at 148. It was a right held by Jerry and a debt owed by Lillian to Jerry

at the time of his death. *See Smith*, 288 S.W.3d at 420. *Hernandez* does not control whether that right passed to Jerry's estate and thus continued as a debt owed by Lillian.

We acknowledge that the Supreme Court of Texas previously held that the estate of a life tenant cannot recover a reimbursement claim for improvements. *See Clift v. Clift*, 10 S.W. 338 (Tex. 1888). We are reticent to extend *Clift* to a reimbursement claim for mortgage principal and insurance payments for two reasons. First, *Clift* observed,

> . . . the father, a tenant for life, made improvements upon a lot to which his children were entitled in remainder. Knowing that after his death the estate is to become the absolute property of those for whom it is his duty to provide, the presumption is strong that the father, in such a case, intends the improvements as a gratuity to his children.

10 S.W. at 340. Here, we address a different family dynamic, and there is no evidence in the record that Jerry intended to provide a gift to Lillian. In reality, although the evidence in the record is scant, all of it points towards Jerry intending to exclusively benefit Betty. Jerry made Betty the sole beneficiary of his will. Lillian wanted Jerry to sell the property so that Lillian could receive her share from the sale, and Jerry refused. And there is no evidence in the record of any harmonious interactions between Jerry and Lillian after Lelia's death. In fact, prior to his death, Lillian participated in a suit against Jerry regarding a garage on the Property that resulted in the easement purchase.

Second, after *Clift*, it has been held that a life tenant is not entitled to reimbursement for improvements even during his life. *Hunter*, 687 S.W.2d at 815. Because a reimbursement claim for improvements could harm a remainderman's interest unfairly, courts have denied a life tenant the ability to recover on such a claim. But mortgage principal and insurance have been treated differently. We see no reason to extend *Clift* as foreclosing the survivability of reimbursement claims based on mortgage principal and insurance.

For two separate reasons, we believe that allowing a reimbursement claim to survive to the estate of a life tenant is the better rule. First, the Supreme Court of Texas defined reimbursement as a vested right. *Heggen*, 836 S.W.2d at 148. Recognition of vested rights and allowing for the testator to pass assets to a beneficiary of his choosing is the essence of probate law. *See Archer v. Anderson*, 556 S.W.3d 228, 234 (Tex. 2018) ("Fundamentally, probate law protects a donor's right to freely dispose of his property as he chooses."). And if the debt being sought was in the nature of rent owed on the property, we have no doubt that the rent earned

9

prior to Jerry's death would pass to his estate. *See Sargeant*, 15 S.W.2d at 594 (constitutional life estate holder is entitled to rents earned during his life). We see no reason to treat a reimbursement debt differently than we would treat a rental debt.

Second, were we to hold otherwise, we would encourage a multiplicity of suits. If the reimbursement right could not be passed to Betty, Jerry would have needed to sue Lillian every time he made a mortgage or insurance payment. Instead, by allowing the reimbursement right to survive to his estate, the reimbursement issue can be finally resolved in one suit. And the law favors resolving all matters between the same parties and between all parties as to the same subject matter in one suit. *See Adams*, 178 S.W. at 996.

Accordingly, for the above reasons, we sustain Betty's first issue.

## Reimbursement of Mortgage Principal and Interest Paid after Jerry's Death

In her second issue, Betty challenges the denial of her reimbursement claim for mortgage principal and interest paid by her after Jerry's death. Specifically, Betty asserts that she is entitled to $991.54 in reimbursement for Lillian's share of the principal and interest that Betty paid.

Betty and Lillian stipulated that they are co-owners of the Property, each owning fifty percent of the Property. Betty testified that she made the loan payments after Jerry died and that Lillian never reimbursed her for half of the expenses.

In her Second Amended Petition for Partition, which was her live pleading at the time of trial, Lillian asserted that Betty solely occupied the property after Jerry's death. Betty confirmed this during trial when she testified that she voluntarily continued to reside in the home after Jerry died. Lillian testified that she had not been allowed to live on the Property after Jerry's death and that Betty had enjoyed exclusive use and possession of the Property. Again, Lillian testified that she never intended to keep the Property.

The trial court found that Betty voluntarily and exclusively occupied the Property after Jerry died. The trial court further concluded that Betty does not have a reimbursement claim due from Lillian.

Unlike Jerry, Betty does not have a constitutional life estate in the property. Thus, the trial court could consider that Betty exclusively occupied the property after Jerry's death. *See Penick*, 783 S.W.2d at 194 (The trial court considers all facts pertaining to the transaction in making its determination regarding reimbursement.). The trial court could also consider that the

10

Property only had one home on it, that home was being occupied by Betty, and both Betty and Lillian agreed that the Property could not be partitioned in kind, but instead needed to be sold. *See Sayers*, 161 S.W.2d at 771 (tenant in common does not have a right to occupy a particular part of the property to the exclusion of the other). Further, in a pretrial hearing, Betty asserted that she had a homestead interest in the Property, but Betty did not reassert that position at trial.

While tenants in common have the right to possess all parts of the property, that does not equate to a blanket defense against a finding of receiving a *quid pro quo* that defeats a reimbursement claim. *See Potka*, 205 S.W.2d at 55 (the trial court should examine whether objection to the cotenant's use of the property was made by one of the other cotenants and whether the cotenant occupying the property exercised control over the property to the exclusion of the other cotenants). Here, Lillian made clear that she wanted the Property sold rather than have Betty reside in it, and Betty chose to continue to reside in the only home on the Property. There was ample circumstantial evidence for the trial court to find that Betty and Lillian could not reside in the same home.

Therefore, we find that the trial court did not abuse its discretion in denying Betty's reimbursement claim for mortgage principal and interest paid after Jerry's death. The trial court could reasonably find that Betty received a *quid pro quo* for her payments in the ability to continue residing on the property. *See Penick*, 783 S.W.2d at 197; *see also In re W.E.R.*, 669 S.W.2d at 717. We overrule Betty's second issue.

## Reimbursement for the Access Easement Paid by Jerry

In her third issue, Betty urges that the trial court erred in denying her reimbursement claim for an access easement paid by Jerry to the Scotts in 2018. Betty contended that she is entitled to $2,000 in reimbursement from Lillian for the access easement.

In 2017, the Scotts sued Jerry. That suit was settled, and the parties to the suit signed an MSA. Lillian attached the MSA to her Second Amended Petition for Partition. At the bench trial of Betty's suit for reimbursement, at Betty's request, the trial court took judicial notice of the MSA.

In the MSA, the parties, including Jerry and Lillian, asserted that Jerry built a structure during his marriage to Lelia, the structure encroached on the Scotts' property, and the parties settled their dispute. As part of that settlement, the Scotts granted an easement to allow access to the structure Jerry built, and Jerry paid $4,000. The parties further agreed that Jerry and Lillian

11

were co-owners of the Property and that the Property included the structure that the Scotts believed encroached upon their property. Also, as part of the MSA, ". . . the Parties hereby agree on behalf of themselves and their assigns never again to bring a claim or a suit in any court against each other with respect to the Circumstances and any claim involved in this matter by these Parties."

The trial court presiding over the 2017 suit signed an Agreed Judgment disposing of the claims regarding the structure. In that Agreed Judgment, the trial court approved the MSA and found that the parties were bound by it.

In the trial of this cause, Lillian testified that Jerry and Lelia built their house within the boundaries of the acre purchased from the Scotts. However, Lillian continued that Jerry and Lelia later built a garage and the garage encroached upon the property that had been retained by the Scotts. She explained that, as a part of the settlement, she and Jerry became co-owners of the property on which the garage had been built and Jerry had an easement so that the garage could be accessed.

Betty asserts that Lillian waived the affirmative defense of release and cannot rely on the release contained in the MSA. From our review of the record, Lillian did not file an answer to Betty's counterclaim for reimbursement; thus, we see no record of Lillian asserting an affirmative defense based on the mutual release contained in the MSA.

When served with a counterclaim, absent a responsive pleading, the party so served is deemed to have pleaded a general denial, but still must specifically plead any affirmative defense. TEX. R. CIV. P. 92. Release is an affirmative defense. TEX. R. CIV. P. 94. But, when issues not raised by the pleadings are tried by express or implied consent of the parties, those issues are treated as though they had been pleaded. TEX. R. CIV. P. 67.

Lillian contested the reimbursement claims at trial. Furthermore, as to Betty's claim for reimbursement for the access easement paid for by Jerry, Lillian argued that Betty's claim was defeated by the MSA. At trial, Betty made no objection that Lillian waived the defense of release. Additionally, Betty specifically requested that the trial court consider the MSA. Therefore, it appears that the issue of release was tried by consent. *See id.*

Because the trial court could consider the entirety of the MSA and Jerry's release of Lillian from any and all disputes regarding the easement, the trial court acted within its discretion

in denying Betty's reimbursement claim for the access easement paid for by Jerry.  *See Penick*, 783 S.W.2d at 194; *see also* TEX. R. CIV. P. 67.  We overrule Betty's third issue.

### DISPOSITION

Having sustained Betty's first issue, we *reverse* the trial court's take nothing judgment and *render* judgment for Betty in the amount of $21,837.30 in reimbursement for Lillian's portion of the mortgage principal and insurance premiums paid for by Jerry after Lelia's death. Having overruled Betty's second and third issues, we *affirm* the remainder of the trial court's judgment.  We *remand* this case to the trial court for the calculation of interest.  *See Holliday v. Weaver*, 410 S.W.3d 439, 444 (Tex. App.—Dallas 2013, pet. denied).

BRIAN HOYLE
Justice

Opinion delivered July 20, 2022.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

13



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JULY 20, 2022**

**NO. 12-21-00122-CV**

**BETTY HENRY,**
Appellant
V.
**LILLIAN BOWENS BROOKS,**
Appellee

Appeal from the 114th District Court
of Smith County, Texas (Tr.Ct.No. 20-0718-B)

THIS CAUSE came to be heard on the oral arguments, appellate record and briefs filed herein, and the same being considered, it is the opinion of this Court that there was error in the judgment as entered by the court below and that same should be reversed and judgment rendered.

It is therefore ORDERED, ADJUDGED and DECREED by this Court that the take nothing judgment rendered in favor of Lillian Bowens Brooks on Betty Henry's reimbursement claims brought on her own behalf and on behalf of Jerry Henry's Estate, be **reversed**, and judgment **rendered** in favor of Betty Henry for $21,837.30 in reimbursement from Lillian Bowens Brooks for Lillian's portion of the mortgage principal and insurance premiums paid by Jerry after Lelia's death. The case is **remanded** to the trial court for the

calculation of interest. In all other respects, the judgment of the trial court is **affirmed**.  All costs of this appeal be, and the same are, adjudged against the Appellee, **LILLIAN BOWENS BROOKS,** for which let execution issue; and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., H nboyle, J., and Neeley, J.*