AMERICAN LEAD CORPORATION *v.* DAVIS ET AL.

[No. 16,747. Filed December 23, 1941. Rehearing denied March 24, 1942. Transfer denied May 1, 1942.]

*White, Wright & Boleman* and *George C. Forrey III*, all of Indianapolis, for appellant.

*J. Burdette Little* and *Henry M. Dowling*, both of Indianapolis, for appellees.

STEVENSON, J.—The question presented by this appeal is the correctness of the ruling of the trial court in sustaining a demurrer to the appellant's complaint.

The appellant brought this action against the appellees, of whom there are approximately one hundred and fifty in number, to enjoin them from prosecuting separate actions of law against the appellant, which actions grew out of the operation of the appellant's business establishment.

The complaint alleged that the appellant is the owner of certain real estate, buildings, and equipment, on which it operated the business of smelting, melting and refining lead from scrap materials. The appellant has been engaged in this business for many years, and has large investments in its plant and equipment.

The appellees, as the owners of property in the immediate vicinity of appellant's plant, charged that the appellant, in the operation of its plant, produces and releases into the atmosphere of said community poisonous, deleterious and deadly gases, dust and fumes of lead which lastingly and permanently invades the atmosphere, and permeates the soil, and is destructive to both human and animal life; that such conduct is injurious to the health of the persons in said community, interferes with their free use of property, and constitutes both a public and a private nuisance, which

is, and will continue to be, dangerous to the lives and health of all persons within such area.

The complaint alleges that each of the appellees, individually, has commenced an action against the appellant for damages alleged to have been suffered to either the person or property, because of this alleged continuing nuisance, and these actions are now pending in various courts in Marion County and the counties adjoining.

The complaint alleges that it is the purpose and intent of the appellees and each of them individually to hinder and prevent this appellant from using and operating its plant and equipment by the maintenance of these suits.

The appellant alleges that each of these suits is unfounded in fact, and that the appellant in the operation of its plant has not, does not, and will not at any time produce and release into the atmosphere of the community any poisonous or deadly gases, or dust of lead, in such quantities or form as will, or can, be injurious to the health or property of persons in said community.

The appellant further avers that three of said causes of action so commenced by residents of the community have been tried; that in the trial of the first case, eighteen days were required; that in the trial of the second case, seventeen days were required; and, in the trial of the third case, seven days were required. In each of these cases that have been tried, the plaintiffs therein were represented by the same counsel; the witnesses testified to substantially the same facts; the same issues of law were involved; and, in each case, the verdict and judgment were for the appellants as defendants therein.

The appellant further alleges that if the appellees are permitted to prosecute their several causes of action so

commenced and now pending, at least ten days or two weeks will be consumed in the trial of each case; that the burden of expense of defending each law suit will be ruinous to the appellant, and it will suffer great and irreparable damage thereby. The appellant alleges that these appellees, acting individually, have refused to join as plaintiffs in one action to enjoin or abate the alleged nuisance in each complaint, but that they are purposely maintaining separate suits in order to destroy and ruin the appellant and the business operated by it.

The appellant further avers that the appellees herein have threatened to and intend to bring similar suits in the future upon the same basic issue, regardless of the outcome of the actions now pending, which actions will be vexatious, multitudinous and continuous.

The complaint alleges that the appellant has no adequate remedy at law for its protection, and prays that an injunction be issued against the appellees from maintaining these actions for damages, until it can be determined in some appropriate action as to whether or not the operation of the appellant's plant constitutes an actionable nuisance. This complaint is verified on information and belief.

To this complaint, the appellees, separately and severally, demurred, for the reason that said complaint does not state facts sufficient to constitute a cause of action. The court sustained this demurrer, and the appellant refused to plead further. Judgment was entered against the appellant, and this appeal has been perfected. The only error assigned on appeal is the alleged error in sustaining the demurrer to the appellant's complaint.

The appellant contends that the complaint contains facts sufficient to invoke equitable jurisdiction to enjoin

the prosecution of these actions at law on the ground of avoidance of a multiplicity of suits.

Jurisdiction of the court of equity to enjoin and prevent a multiplicity of actions at law has been the subject of much judicial discussion. Pomeroy in his work on equity jurisprudence states the rule as follows:

> "Generally, where the facts are similar and the law applicable to one case must be applied to all, one defendant resisting a great number of similar actions may have relief in equity, upon proper application, to prevent a multiplicity of suits, and require the parties to present their claims in one action, especially where vexatious litigation may be avoided, and no unnecessary delay will result to the plaintiff, and a speedy determination of the several claims may be had. . . ." Pomeroy's Equity Jurisprudence, Vol. 1, Fifth Edition, Sec. 261h.

Chief Justice Campbell, of the Supreme Court of Mississippi, in the case of *Tribette* v. *Railroad Co.* (1892), 70 Miss. 182, 12 So. 32, severely criticized the soundness of this rule. He asserted that equity never took jurisdiction of a controversy with numerous parties where the parallel suits were legal and the only ground for equitable relief was avoidance of multiplicity. Judge Campbell insisted that:

> " 'There must be some recognized ground of equitable interference, or some community of interest in the subject-matter of controversy, or a common right or title involved, to warrant the joinder of all in one suit; or there must be some common purpose in pursuit of a common adversary, where each may resort to equity, in order to be joined in one suit; and it is not enough that there "is a *community of interest merely in the question of law or of fact involved*," etc., as stated by Pomeroy.' " Harvard Law Review, Vol. 45, p. 1297, 1316 (Chafee).

This classic statement by Judge Campbell of the restricted view of bills of peace with multiple parties, and Pomeroy's statement of the broad view, previously quoted, are the rallying points of the opposing forces which forms the basis of this conflict of authority. Because of this conflict in views, this court will not undertake to present the arguments or discuss the cases in support of both positions. For those interested in the general subject, attention is directed to the annotation, which appears in 90 A. L. R. 554.

It will be our purpose in this opinion to call attention to only a few of the decided cases wherein we have found that on facts similar to those here presented, the courts have held that a mere community of interest in questions of law and fact involved was a sufficient ground on which to invoke the jurisdiction of a court of equity.

Generally speaking, the federal courts have recognized the soundness of the rule as announced by Pomeroy and applied it in cases similar to the one at bar. They have not been unmindful of the conflict of authority, however. So in the case of *First State Bank* v. *Chicago, R. I. & P. R. Co.* (1933), 63 F. (2d) 585, 588, 90 A. L. R. 544, the court says:

> "A legal conflict has raged for years over the question of whether equity has jurisdiction on the ground of preventing a multiplicity of suits where there exists merely a community of interest in questions of law and fact in the controversy, or whether there must be, in addition to preventing a multiplicity of suits, some recognized ground of equity jurisdiction."

In this case, some forty-eight bills of lading had been forged by a certain shipper against the appellee railroad, and these bills of lading had passed into the hands of many parties, who were each prosecuting suits

against such railroad. The railroad brought this action, praying that the holders of such bills of lading be enjoined from prosecuting suits thereon, and that all bills outstanding should be submitted in a single proceeding, in order that the same might be cancelled and held for naught. The United States Circuit Court of Appeals, Eighth Circuit, after reviewing many authorities on the subject, said (p. 590):

> "Many courts have hesitated to hold that multiplicity of suits alone is ground of equitable jurisdiction, because in that way the right to trial by jury might be destroyed. The answer to that is that to sustain a suit in equity in the federal courts it must appear there is no plain, adequate, and complete remedy at law, and, if the remedy at law is not adequate, the right to a jury trial does not exist. That point is always involved in the question. If prevention of multiplicity of suits confers equitable jurisdiction, no right to a jury trial exists. The avoidance of unnecessary suits should be much desired by litigants and taxpayers. In Munson Inland Lines, Inc. v. Insurance Co. of North America (D. C. N. Y.), 36 F. (2d) 269, 271, Judge Woolsey clearly expresses such desire, 'that the avoidance of multiplicity of suits by every device, which is jurisdictionally possible and practically convenient, should be encouraged, and should be one of the main objectives of procedural administration, and of decisions of courts in practice cases.'"

The same rule has been followed by the federal court of Alabama, in the case of *Montgomery Light & Water Power Co.* v. *Charles* (1919), 258 F. 723, 727. In this case some one hundred and thirty farmers, whose lands had been flooded, instituted separate actions for damages against the appellant, as owner of a dam, the negligent maintenance of which is alleged to have caused their damage. In this situation, the power company filed an action in the nature of a bill of peace, in which

it alleged that in each case questions of law and fact were identical, that it was guilty of no negligence, had committed no wrong, and asked to have the prosecution of the separate actions of law restrained. The court entertained the bill and said:

". . . The theory upon which the bill is filed in this case is that equity can put at rest the controversy and determine the extent of the rights of the claimants of distinct interests in a common subject, and I think the bill should be sustained, for it appears to be essentially one for peace, and certainly, if it should be found that the Power Company is liable at all, then the claim of each of the persons, plaintiffs at law, can be fairly and fully considered, and, if need be, the amount of damages to be awarded in any case might, in the discretion of the court, be submitted to a jury.

"Manifestly, the Power Company, if it defends at all, will defend upon the ground that no negligence on its part caused the crops of Charles and others to be overflowed and destroyed; and therefore it can and must make a common defense to a cause common to all the plaintiffs in the action at law, having a separate interest in a common subject-matter."

In *Fish* v. *Kennamer* (C. C. A. 10, 1929), 37 F. (2d) 243, 246, 247, the court said:

"Moreover, it is a general principle that equity will take jurisdiction on the sole ground of preventing a multiplicity of suits, and in such a case an objection that there has been a misjoinder of parties will not be sustained. . . .

"'. . . Equity discountenances a multiplicity of suits—that is one of the grounds of its jurisdiction; and it aims, by restraining a multiplicity of suits, to give to the owner of the property the beneficial enjoyment of it, and to enable him to get the benefit of its ownership, rather than waste it in many and diverse suits.'"

The same rule is recognized by the United States Supreme Court where, in the case of *Hale* v. *Allinson* (1903), 188 U. S. 56, 78, 47 L. Ed. 380, the court said:

"We are not disposed to deny that jurisdiction on the ground of preventing a multiplicity of suits may be exercised in many cases in behalf of a single complainant against a number of defendants, although there is no common title nor community of right or interest in the subject matter among such defendants, but where there is a community of interest among them in the questions of law and fact involved in the general controversy."

A similar question to the one at bar was before the Court of Appeals of Texas, and in the case of *Luttring* v. *American Fruit Growers* (1932), 49 S. W. (2d) 980, 983, the court, in granting a temporary writ of injunction in favor of the American Fruit Growers, restraining 157 farmers from prosecuting suits on 157 claims, said:

"The facts in the case now before this court show that two cases have been filed, and it is frankly admitted that more than one hundred and fifty are in course of incubation and will certainly arrive in courts of proper jurisdiction. It exhibits a multiplicity of suits many times multiplied. In these perilous times such a multitude of suits with their attendant multiplied costs would wreck any ordinary fruit corporation, be it domestic or foreign. No litigant should be subjected to such an oppressive and inexcusable assault upon its rights of property, however strongly fraud and negligence may be alleged. The allegations, though proved will not transform the corporation into an outlaw against whose property confiscation and appropriation would be a virtue. No doubt, as contended by appellants, hardships and difficulties will arise from a consolidation of the many claims, but, on the other hand, a consolidated trial of the consolidated cases would lessen the costs and salvage time of court and individuals. In addition, it would pre-

vent a grievous wrong to a defendant through the medium of courts."

This same court also supports its conclusion on the basis of public policy and announces the general rule that:

"Public policy demands a repression of a multiplicity of suits on the same subject, based on the same or similar evidence."

Multiplicity of suits may not only operate to destroy the business of the unfortunate defendant but it also increases the cost to the public and clogs the courts with vexatious, exasperating litigation.

In the case of *Kellogg* v. *Chenango Valley Sav. Bank* (1896), 42 N. Y. S. 379, 382, 383, a complaint was brought by a receiver of a national bank against 146 persons, who held pass books upon which they were basing claims against the bank. Several individual suits had been filed by such holders and others were threatened. The complaint asked that the prosecution of these suits be restrained and the pass books be cancelled and surrendered. The court said:

". . . The fact that each claimant may have had separate transactions with the savings bank at different dates does not destroy the community of interest, so as to prevent the interposition of a court of equity. . . . The fact that there is or will be a multiplicity of suits indicates the inadequacy of legal methods and remedies, and presents the occasion for the exercise of equitable jurisdiction."

Without quoting further from decided cases, it is our opinion that the rule is correctly summarized by Pomeroy in his work on Equity Jurisprudence, in the following language:

". . . notwithstanding the positive denials by some American courts, the weight of authority is simply overwhelming that the jurisdiction may and should be exercised, either on behalf of a numerous body of separate claimants against a single party, or on behalf of a single party against such a numerous body, although there is no 'common title,' nor 'community of right' or of 'interest in the subject-matter,' among those individuals, but where there is and because there is merely a community of interest among them in the questions of law and fact involved in the general controversy, or in the kind and form of relief demanded and obtained by or against each individual member of the numerous body. . . ." Pomeroy's Equity Jurisprudence, § 269, Vol. 1, Fifth Edition.

It seems to us that the application of this rule of law especially commends itself to the case at bar. The individual actions, commenced by approximately 150 residents in the community wherein the appellant operates its plant, are all predicated upon the basic issue of damages arising from the operation of a nuisance. The appellant is charged in each of these cases with the perpetration of a continuing wrong. These complaints alleged that the appellant, by the conduct of its business, has injured, and is continuing to injure the persons and property of those residing in the vicinity. There is accordingly a community of interest among the appellees in the questions of law and fact involved in this controversy. It is clear, under such circumstances, that all these parties so affected could have joined as plaintiffs in an action to abate a continuing nuisance. Avoidance of a multiplicity of suits would have warranted such joinder.

". . . A number of plaintiffs may be joined in one action when they are all injured in a similar manner and are interested in the same sort of relief, and a number of defendants may likewise be

joined in one action when they all contributed to the creating of a nuisance. A multiplicity of suits can thus be readily avoided. . . ." *Albaugh* v. *Abbott* (1931), 253 Mich. 588, 593, 235 N. W. 263.

Our Supreme Court has recently announced that:

". . . it is the policy of the law in all proper cases to avoid a multiplicity of suits." *Zumpfe* v. *Piccadilly Realty Co.* (1938), 214 Ind. 282, 288, 13 N. E. (2d) 715.

This policy of the law is found exemplified in many instances.

Where a liability exists on the part of a corporation to numerous creditors, our courts have held that:

"One action to enforce this liability may be brought by one creditor on behalf of himself and all other creditors." *Mitchell* v. *Hart, Executor* (1940), 107 Ind. App. 548, 25 N. E. (2d) 665, and cases cited.

A power to consolidate causes of action is predicated upon this policy and is one of the inherent powers of a court.

"A court should always be possessed of the power to make orders which will expedite its business, prevent costs and a multiplicity of suits when one will answer all the purposes of justice." *Locomotive Engineers' etc. Assn.* v. *Higgs* (1923), 79 Ind. App. 427, 135 N. E. 353.

Therefore, it is apparent to us that a court in which many of these cases are pending might well order a consolidation of such causes for purposes of trial. However, this right, even though it exists, would not afford the appellant a complete remedy, for the reason that many similar actions are on file in courts of other jurisdictions. It seems to us that, in fairness to both courts and litigants, the appellant in this case is entitled to

have finally determined once and for all the basic question as to whether or not the conduct of appellant's business has been, is, and will be an actionable nuisance. This question has been tried by the appellees' counsel not once, but in three separate law suits. Forty-two days were consumed in the trial of these three cases. The wrongful conduct of the appellant, in the operation of its plant, was the issue. The counsel were the same, the witnesses were substantially the same, and the evidence by which liability was sought to be established was substantially the same. In each of these cases, the verdict of the jury and the judgment of the court were for the appellant. Yet, in face of this record, the appellees are continuing to litigate this question, and the complaint alleges that the appellees have purposely instituted said separate suits for the purpose of embarrassing and ruining the appellant and destroying its business. Surely, upon such showing, the appellant is entitled to insist that the appellees be joined in an action for the purposes of litigating fully and finally the question of the appellant's liability. If it should again be found that the appellant is not liable at all, then this litigation should cease. If, on the other hand, it should be found that the appellant is liable, then the claim of each of the appellees, as plaintiffs at law, can be fairly and fully considered and if need be the amount of damages to be awarded in any case may, in the discretion of the court, be submitted to a jury.

For the reasons stated, it is our opinion that the complaint of the appellant contained facts sufficient to invoke the jurisdiction of the court of equity, and the court was, accordingly, in error in sustaining a demurrer thereto.

The judgment of the trial court is reversed, with instructions to overrule the appellee's demurrer to the

appellant's complaint, and for further proceedings consistent with this opinion.

Judgment reversed.

Blessing, J., not participating.

NOTE.—Reported in 38 N. E. (2d) 281.